# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
August 26, 2022
Lyle W. Cayce
Clerk

No. 21-70008

Travis James Mullis,

*Petitioner—Appellant*,

*versus*

Bobby Lumpkin, *Director,*
*Texas Department of Criminal Justice, Correctional Institutions Division*,

*Respondent—Appellee*.

Application for Certificate of Appealability from
the United States District Court
for the Southern District of Texas
USDC No. 3:13-CV-121

Before Smith, Higginson, and Willett, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

Travis Mullis sexually assaulted and murdered his infant son. A Texas jury convicted him of capital murder. The jury found that Mullis likely would commit future violent acts and that nothing mitigated his culpability. So the trial court sentenced him to death.

Mullis neither appealed that conviction and sentence nor timely filed a state habeas petition. He nevertheless filed a federal habeas petition asking the district court to disregard or excuse his procedural default. The district

court refused, dismissed his petition, and denied him a certificate of appealability ("COA").

Mullis asks this court for a COA. He presents three reasons for disregarding or excusing his procedural default. Two are foreclosed by precedent. One potential excuse is debatable by reasonable jurists, so we grant the COA in part.

I.

A.

After Mullis's conviction, the trial court appointed two attorneys to represent him—one for a direct appeal and another for a state habeas petition. Mullis's direct-appeal counsel moved for a new trial. But a month later, Mullis asked the trial court to let him appear *pro se* to waive his rights to direct review. He told the court that his direct-appeal counsel had advised him not to do that but that he was doing so anyway "voluntarily, intelligently[,] and knowingly, and with a full appreciation of the direct and collateral consequences of his actions."

The trial court held a hearing on Mullis's motion to proceed *pro se* in his direct appeal. Mullis's direct-appeal counsel attended the hearing. He explained that although he disagreed with Mullis's decision, he had "explained the consequences" of proceeding *pro se* and that Mullis had a "rational [and] factual understanding" of what he was doing. Mullis also clarified that he wished to withdraw his motion for a new trial. The trial court allowed him to withdraw the motion and appear *pro se*.

At that hearing, Mullis also indicated that he would try to waive habeas review. He said he was "abandon[ing] any and all challenges to his conviction and death sentence." But there was not yet any procedural mechanism by which he could do that. Texas habeas petitioners can waive collateral review only by letting the filing deadline pass. *Ex parte Reynoso*, 257 S.W.3d 715, 720

n.2 (Tex. Crim. App. 2008) (per curiam). And that deadline was still months away.

Under Texas law, capital cases automatically are directly reviewed by the Court of Criminal Appeals ("CCA").[1] So despite Mullis's attempted waiver, the CCA reviewed his case and summarily affirmed the conviction and sentence.[2]

A few months after the trial court had allowed Mullis to represent himself on direct appeal, Mullis persuaded his habeas counsel that he wished to waive collateral review. His habeas counsel then moved to do that, contingent on a mental health evaluation. A psychiatrist examined Mullis and concluded that he "possesse[d] sufficient present ability to knowingly, intelligently, and voluntarily waive his rights to post-conviction habeas review." The trial court held a hearing to discuss the motion and the psychiatrist's report.

At the hearing, Mullis's habeas attorney said he had "strenuously objected" to Mullis's attempt to waive his collateral review. He explained that his team had spent the last six months thoroughly investigating Mullis's case, which had included interviewing members of his family. But he did not object to the content of the psychiatrist's report.

Mullis testified that he wanted to waive collateral review because he had "accepted" the jury's punishment. But his habeas counsel told the court to account for Mullis's age, pointing out that "most 25-year-olds probably don't know exactly what they want." Mullis countered, "I've thought about this for the three years leading up to trial, already anticipating the sentence

---

[1] Tex. Code Crim. Proc. Ann. art. 37.071 § 2(h) (West, Westlaw through 2021 3d C. Sess.).

[2] *Mullis v. State*, No. AP-76,525, 2012 WL 1438685, at *1 (Tex. Crim. App. Apr. 25, 2012) (per curiam).

before it came. . . . I've had time since then to do legal research." He said he understood that his waiver would stop his lawyers from "trying to find something that might change the ultimate outcome" of his case.

Mullis's intransigence prompted his attorney to change tack. He pointed out that the deadline for Mullis's habeas petition was still at least two months away. So he asked for an extension to let Mullis think things over. Mullis grudgingly accepted the delayed waiver decision but insisted that his counsel should be released immediately. The court granted the extension and said it would take the representation matter under advisement.

The court released an order the next day. It allowed Mullis to "act *pro se* regarding any decisions concerning waiver [or] filing a post-conviction writ of habeas corpus." But it also permitted his habeas counsel to "continue to investigate and prosecute a post-conviction writ." It admonished him not to "file the writ if Mr. Mullis persists in electing to waive filing."

The day after that order, Mullis wrote to his habeas counsel. Mullis told him "NOT [to] file a writ" but acknowledged that he was permitted to continue investigating.

Mullis's habeas counsel sometimes purported to continue representing Mullis. Four months after the hearing, the attorney asked the court to further extend the habeas-petition deadline. He attributed that motion to "Mullis, by and through [his office]." But his team never finished investigating Mullis's case. And he never drafted a petition. When the twice-extended deadline arrived, he told the state that Mullis stood by his decision to waive collateral review.

A few months after the habeas-petition deadline, Mullis asked the trial court to "reinstate [his] appeals." He asked for the reappointment of both his direct-appeal and habeas counsel. He explained, "New evidence has surfaced that was not available at the time I chose to waive my appeal." He said

he would not have waived review had he known of the evidence. He sent a similar letter to the CCA.

About a month later, the CCA noted that Mullis had not timely filed a habeas petition. It also observed that Mullis had waived habeas counsel and expressed an intent to waive collateral review altogether. Though he could have changed his mind before the filing deadline, it said, he did not indicate that by filing a petition. So it concluded that he had waived "all grounds for relief that were available to him before the [petition was due]."

Regarding Mullis's apparent untimely change of heart, the CCA pointed out that Texas law provided a possible escape hatch. A capital prisoner may file a habeas petition out of time if he can "show cause as to why the application was untimely filed."[3] If he shows good cause, he gets more time to prepare a petition, and the CCA may appoint new counsel.[4]

But the next day, Mullis revolved another 180 degrees. Although the CCA very recently had highlighted a way Mullis might proceed, he wrote the CCA to announce that he once again was "revok[ing] and withdraw[ing] [his] request to renew any [and] all appeals." That decision, he said, was "final." He also reaffirmed his desire to represent himself and disclaimed any attorneys' filings.[5]

---

[3] Tex. Code Crim. Proc. Ann. art. 11.071 § 4A(a) (West, Westlaw through 2021 3d C. Sess.) ("Section 4A").

[4] *See id.* § 4A(b)–(c).

[5] He also wrote a supplement to that letter where he admitted, again, to intentionally murdering his son. He said,

> There has never been any question of innocence in this case. The only arguments made were technicalities [and] some psych issues raised from childhood. . . . [T]he psych issues are [and] were based on false self reporting [and] acting of symptoms in an attempt to circumvent the legal system . . . . It is in the best interests of justice for the victim [and] the victim's

Mullis's erratic behavior prompted his former—or, arguably, his then-current—habeas counsel to act.[6] That lawyer moved the CCA to allow Mullis to file an untimely habeas petition for good cause. That cause, he explained, was Mullis's "impaired mental health." The lawyer retained another psychiatrist to examine Mullis, and that psychiatrist concluded that Mullis was "depressed" and "suicidal" during his earlier psychiatric evaluation.

That condition, the lawyer reasoned, made Mullis incompetent "at the time he [decided] to refuse his appellate rights." So the lawyer asked the CCA under Section 4A to (1) find good cause to allow Mullis to file an untimely habeas petition, (2) reappoint him formally to represent Mullis, and (3) give Mullis 270 days to prepare a petition.

The CCA refused. It pointed out that the second psychiatrist's evaluation could prove, at most, that Mullis was incompetent when he first was evaluated in October 2011. But the second psychiatrist also had confirmed that Mullis *was* competent by the second evaluation in November 2012. The CCA reasoned that the second psychiatrist's report said little about Mullis's competence concerning (1) the July 2012 habeas-petition deadline, (2) his August 2012 letter asking to reinstate his review options, or (3) his September 2012 letter purporting to re-waive review—all of which were closer in time to a date on which Mullis was competent. It described Mullis's efforts to waive review as "persistent." So it found that Mullis had not established "good

families for this appeal to stop here and execution of this sentence to be carried out in a timely manner.

[6] Counsel himself was unclear about his conception of his role. He again captioned a motion, "Mullis, by and through [his office]." But he said that Mullis was "currently acting *pro se*," and he requested that he be "appointed" as Mullis's counsel. He described himself as Mullis's "pro bono counsel."

cause" and denied his Section 4A motion.

That denial terminated Mullis's state-review prospects.[7] But it did not end his erraticisms.

B.

With the help of new attorneys, Mullis filed a federal habeas petition about seven months later. His lead federal attorney reports that he was "eager" for further representation. He "cooperated" with his lawyers "for more than two years" and allowed them to petition for habeas review.

Mullis's federal petition explained that his procedural default should be excused for two alternative reasons: *first*, because the state's procedural bar was inadequate, and *second*, because he could overcome that default by showing cause and prejudice. Mullis later clarified that he could show cause and prejudice for two reasons: *first*, because his repeated waivers were involuntary, and *second*, because his state-habeas counsel had ineffectively represented him during post-conviction proceedings. He also raised seventeen merits contentions.[8]

The district court agreed to stay federal proceedings to give Mullis another chance to seek state review. He squandered it. A few months into the stay, Mullis asked the district court to "revoke the stay [and abeyance] order and immediately dismiss the entire habeas petition. Effectively this will

---

[7] *See* Tex. Code Crim. Proc. Ann. art. 11.071 § 5 (West, Westlaw through 2021 3d C. Sess.) ("If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief . . . unless the application contains sufficient specific facts establishing that . . . the current claims and issues . . . could not have been presented previously in a timely initial application . . . . If the court of criminal appeals determines that th[is] requirement[ ] ha[s] not been satisfied, the court shall issue an order dismissing the application as an abuse of the writ . . . .").

[8] Most of those contentions related to the penalty phase.

terminate my entire habeas proceeding." He reported telling his federal-habeas counsel "in no uncertain terms" that he "did NOT want to appeal under any circumstances." He claimed the lawyers' appointment was done "behind [his] back without [his] knowledge or permission." But he admitted ultimately having "cooperate[d]" with his counsel "at least until [he] could prepare an adequate fight to terminate the writ."

Mullis insisted that he was "competent to waive" review. The district court partially reopened proceedings to decide whether that was true. But before the court decided, Mullis made another about-face. He maintained that he was competent, but he explained that he had changed his mind and wished to "proceed" with the federal petition. Still, his attorney told the district court that Mullis would not "exhaust remedies in state court."

So the district court resumed collateral review. Predictably, Mullis soon tried once more to kibosh the petition. He assured the court that his request was "final and w[ould] not be withdrawn under any circumstances." Just as predictably, he withdrew that request before it could be adjudicated.

Finally, the Director moved for summary judgment. After several rounds of briefing, the district court dismissed Mullis's petition. Although it did not commit to either of two state-procedural candidates, it concluded that "Texas law would not allow Mullis to raise his claims in state court." It reasoned that, under binding caselaw, both of those candidate procedures were adequate and independent grounds to bar federal review. It also rejected both of Mullis's proposals for excusing his default after concluding that our caselaw foreclosed them. "[I]n light of" that "controlling precedent," the court also denied Mullis a COA.

Mullis now seeks a COA from this court.

## II.

Habeas petitioners cannot appeal denials "[u]nless a circuit justice or judge issues a [COA]." 28 U.S.C. § 2253(c)(1). Because the district court denied Mullis's petition on procedural grounds, a COA may not issue unless Mullis shows both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Mullis attacks the district court's procedural ruling from two angles. *First*, he says that he did not procedurally default his state claims after all because the state procedural bar is inadequate. *Second*, and alternatively, he asks us to excuse his procedural default.

Reasonable jurists could not debate the correctness of either the district court's adequacy ruling or its rejection of Mullis's involuntariness excuse. They could, however, debate whether Mullis's default is excusable for ineffective assistance of postconviction counsel. And Mullis has raised at least one debatable constitutional merits claim. So we grant his COA request in part.

### A.

We do not review federal questions presented in a case decided by a state court on a "state law ground that is *independent* of the federal question and *adequate* to support the judgment." *Lee v. Kemna*, 534 U.S. 362, 375 (2002) (quotation omitted). That rule procedurally bars federal habeas petitions where "the last state court to review the petitioner's claims unambiguously based its denial on a state procedural bar." *Gonzales v. Davis*, 924 F.3d 236, 243 (5th Cir. 2019) (per curiam).

The last state court to review Mullis's claims was the CCA. It denied his application to file an untimely state habeas petition under Section 4A. It

concluded that he had "failed to establish good cause" for the delay and so did not reach the merits of his claims. That decision was "unambiguously based . . . on a state procedural bar," *Gonzales*, 924 F.3d at 243, because the CCA stated no other ground for the denial.

Recognizing that the denial was procedural, Mullis contends that the underlying rule is nevertheless inadequate to foreclose review of his claims on the merits. He says Section 4A is inadequate to bar review because the CCA almost always grants Section 4A applications to file out of time. He reports that his was "one *of only three* capital cases in which the CCA had refused to find 'good cause.'"

To bar federal habeas review, a state procedural rule must be "firmly established and regularly followed." *James v. Kentucky*, 466 U.S. 341, 348 (1984). A rule satisfies that standard "even if there is an occasional aberrant state court decision." *Balentine v. Thaler*, 626 F.3d 842, 856 (5th Cir. 2010). The question is whether the rule is "applied strictly or regularly to the vast majority of *similar* claims." *Emery v. Johnson*, 139 F.3d 191, 195 (5th Cir. 1997) (quotation omitted and emphasis partially deleted).

Mullis does not engage with that standard by observing that the CCA regularly finds good cause. A Section 4A applicant's case must have been similar to Mullis's for it to be a relevant comparator. That is, the applicant must have failed to file a timely state habeas petition because he wished "to forego habeas review."

Mullis provides no examples of the CCA's finding good cause in such cases. He cites, for example, *Ex parte Ramirez*.[9] There, the state trial court

---

[9] No. AP-75,167 (Tex. Crim. App. July 7, 2008) (per curiam), *available at* https://search.txcourts.gov/SearchMedia.aspx?MediaVersionID=b45f8034-393d-44c1-9e14-5d79435d0b3b&coa=coscca&DT=OTHER&MediaID=c4ffdc8c-17a6-4335-b943-c18eb

had appointed an attorney to represent the prisoner in state habeas proceedings.[10] After receiving three extensions, that attorney inexplicably blew the filing deadline, and the prisoner asked the trial court to remove the attorney from his case.[11] The CCA ordered the attorney to "file an affidavit . . . setting out good cause for his failure to timely file" a petition.[12] The attorney refused, so the CCA sanctioned him and appointed a new lawyer, whom it directed to file "a writ of habeas corpus."[13]

In doing so, the CCA noted that the attorney had "not even attempted to show good cause for his failure to timely file" a petition.[14] But that observation did not mean, as Mullis implies, that the CCA elected to disregard Section 4A's "good cause" requirement. Instead, it had no idea what the prisoner's good cause for not filing the petition might be because the prior lawyer had refused to explain himself. That case says nothing about the CCA's application of the "good cause" requirement in cases where the prisoner's reason for not filing a habeas petition is that, at the filing deadline, he did not wish to challenge his conviction.

The same is true of the remaining cases Mullis cites: None involved a prisoner who elected not to petition for a writ. In those cases, a prisoner's counsel had filed a defective petition that would have been timely but for a trial court's error;[15] a prisoner's counsel dubiously claimed to have filed a

---

6a2d1b1.

[10] Slip op. at 1–2.

[11] *Id.* at 2.

[12] *Ibid.*

[13] *Id.* at 2–3.

[14] *Id.* at 3.

[15] *Ex parte Medrano*, No. WR-78,123-01, slip op. at 2–3 (Tex. Crim. App. Nov. 7, 2012) (per curiam), *available at*

missing petition and then disregarded a CCA order to refile it;[16] and prisoners' counsel "misunderstood the law" and so did not timely file petitions.[17] In other words, the CCA regularly allows untimely petitions following errors by counsel or the trial court.

The CCA does not, however, allow untimely petitions where a prisoner foregoes collateral review and then changes his mind. That's because a petitioner cannot show "good cause" when "the delay in [applying] for [a] writ of habeas corpus is attributable to [the] applicant's own continued insistence on foregoing [that] remedy." *Ex parte Reynoso*, 228 S.W.3d 163, 166 (Tex. Crim. App. 2007) (per curiam).[18] The CCA has adhered to that rule in

---

https://search.txcourts.gov/SearchMedia.aspx?MediaVersionID=70422585-023b-4713-8c23-5145c4d473c6&coa=coscca&DT=OTHER&MediaID=46076a59-366d-417f-9787-088155abbec8.

[16] *Ex parte Castillo*, No. WR-70,510-01, slip op. at 2–3 (Tex. Crim. App. Apr. 22, 2009) (per curiam), *available at* https://search.txcourts.gov/SearchMedia.aspx?MediaVersionID=7c71bd6d-abbc-4c09-a3e9-4e0a54d9ecd0&coa=coscca&DT=OTHER&MediaID=77785f06-f5bf-4283-a43c-3d0d74fefe5f.

[17] *Ex parte Luna*, No. WR-70,511-01, slip op. at 2 (Tex. Crim. App. Oct. 1, 2008) (per curiam), *available at* https://search.txcourts.gov/SearchMedia.aspx?MediaVersionID=9501b7d4-c14f-4d0b-9045-112d30ae3286&coa=coscca&DT=OTHER&MediaID=e57ee1ab-dc66-42bd-98ed-79b1e8f2e3a0; *Ex parte Neal*, No. WR-70,512-01, slip op. at 2 (Tex. Crim. App. Oct. 1, 2008) (per curiam), *available at* https://search.txcourts.gov/SearchMedia.aspx?MediaVersionID=955f3063-4c4a-4826-bfd7-e0fdd5821ac0&coa=coscca&DT=OTHER&MediaID=0887d8ea-dc78-4ec5-9699-cf1949f95a5e; *Ex parte Young*, No. WR-70,513-01, slip op. at 2 (Tex. Crim. App. Oct. 1, 2008) (per curiam), *available at* https://search.txcourts.gov/SearchMedia.aspx?MediaVersionID=4f87c1fa-0f17-4ac2-97bf-51e145b388d9&coa=coscca&DT=OTHER&MediaID=3e2f1daa-1f87-4d8e-9c30-e91e790395f0.

[18] On *sua sponte* rehearing, the CCA later determined that Reynoso did not meet that standard because his failure to file was partially attributable to his counsel's "mistaken, but not totally implausible, interpretation of the law." *Ex parte Reynoso*, 257 S.W.3d 715, 723 (Tex. Crim. App. 2008) (per curiam). But it did not undermine the rule it previously had stated.

every example we can find.[19]

Mullis has the "burden to demonstrate that the procedural bar is not regularly applied." *Wright v. Quarterman*, 470 F.3d 581, 586 (5th Cir. 2006). He has not identified one similar case where the CCA allowed an untimely application. On the other hand, the CCA has applied the same procedural rule to bar untimely applications in at least four similar cases.

We conclude that the state rule barring untimely petitions where the sole reason for the delay was the petitioner's election not to file is "firmly established and regularly followed." *James*, 466 U.S. at 348. So that rule is adequate to bar Mullis's federal petition. Without any contrary evidence, that conclusion is not debatable by reasonable jurists.

B.

Still, Mullis says we must excuse his procedural default. We may excuse a procedural default only if the petitioner shows "cause" for and "prejudice" from the default. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). To show

[19] *See Ex parte Gonzales*, 463 S.W.3d 508, 509 (Tex. Crim. App. 2015) (per curiam) (holding that an untimely writ was barred by the abuse-of-the-writ doctrine after previously having held that the applicant's unequivocal "desire to waive habeas" plus his decision not to petition for a writ were sufficient to waive "his right to the review of . . . [a] habeas application" (quotation omitted)); *Ex parte Tabler*, No. WR-72,350-01, slip op. at 2 (Tex. Crim. App. Sept. 16, 2009) (per curiam) ("Good cause has not been shown" where the failure to file was due to the applicant's "continued insistence on foregoing" collateral review.), *available at* https://search.txcourts.gov/SearchMedia.aspx?MediaVersionID=b370c5b6-d2ea-4d92-be0d-1e129b78bce4&coa=coscca&DT=OTHER&MediaID=50e5691b-a3bb-4579-83ab-ca0021a01e71; *Ex parte Austin*, No WR-59,527-01, slip op. at 2 (Tex. Crim. App. July 6, 2004) (per curiam) (denying a motion to file out of time and noting that good cause is assessed regarding "the actions or inactions of [the] applicant" and observing that Austin had "offered no explanation for his dilatory acts"), *available at* https://search.txcourts.gov/SearchMedia.aspx?MediaVersionID=a0dc5220-2918-4cff-a1fc-57bb35291ce7&coa=coscca&DT=OPINION&MediaID=852244e8-e3f3-4d2d-b424-7c05a03bb9f3.

cause, the petitioner must identify "some objective factor external to the defense [that] impeded counsel's efforts to comply with the relevant procedural rule." *United States v. Vargas-Soto*, 35 F.4th 979, 993 (5th Cir. 2022) (alteration adopted and quotation omitted). "A factor is external to the defense if it cannot fairly be attributed to the movant." *Ibid.* (quotation omitted).

Mullis offers two excuses. *First*, he claims that his waiver of state habeas review was involuntary because of his mental condition. *Second*, he says his state habeas counsel's performance was so poor that it constituted either abandonment or ineffective assistance.

1.

Mullis's involuntary-waiver claim is foreclosed by precedent. We held in *Gonzales*, 924 F.3d at 244, that "mental incompetency . . . is not a cause external to the petitioner."[20] Mullis tries to evade that holding by distinguishing between competency and voluntariness. That distinction matters in some contexts,[21] but not here. Mullis does not contend that he failed to appreciate the consequences of his decision or that it was coerced, *see Moran*, 509 U.S. at 401 n.12; he says his waiver was the "manifestation of his . . . mental illness and history of trauma." In other words, he says he did not have the *ability* to resist waiving collateral review, a condition associated with competence, not voluntariness. *Ibid*.

---

[20] *See also Schneider v. McDaniel*, 674 F.3d 1144, 1154 (9th Cir. 2012) ("[A] pro se petitioner's mental condition cannot serve as cause for a procedural default . . . .").

[21] *See Godinez v. Moran*, 509 U.S. 389, 401 n.12 (1993) ("The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings. The purpose of the 'knowing and voluntary' inquiry, by contrast, is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced." (citation omitted)).

Moreover, even if his claim sounds in voluntariness instead of competence, *Gonzales* still forecloses it. We explained that any "mental impairment[ ]" is internal to the petitioner. *Gonzales*, 924 F.3d at 244 n.4. So even if voluntariness is the right claim, it cannot establish cause here because the involuntariness arose, if at all, from Mullis's mental condition, not from an external factor such as coercion.

Perhaps sensing that problem, Mullis urges us to disregard *Gonzales*. He says it "conflicts with Supreme Court precedent in *Martinez*" and with *Rumbaugh v. Procunier*, 753 F.2d 395 (5th Cir. 1985), and *Fisher v. Johnson*, 174 F.3d 710 (5th Cir. 1999).

Whether *Gonzales* conflicts with *Martinez* is not for us to say. The panel that decided *Gonzales*, 924 F.3d at 244 n.3, expressly considered *Martinez*. When a panel of our court decides the meaning of a Supreme Court opinion, it binds later panels to that interpretation.[22]

*Gonzales* does not conflict with *Rumbaugh* or *Fisher*. Neither dealt with the cause-and-prejudice standard. *Rumbaugh*, 753 F.2d at 398, asked whether the petitioner was competent to withdraw his *federal* habeas petition; *Fisher*, 174 F.3d at 714, concerned equitable tolling of AEDPA's statute of limitations. We do not write off on-point precedent any time our doctrine contains theoretical tension. We follow a first-in-time panel opinion instead of a later decision in the rare event that the two holdings are "irreconcilable." *Thompson v. Dallas City Atty's Office*, 913 F.3d 464, 468 (5th Cir. 2019). The different contexts implicated by each of those three decisions allow us to reconcile their holdings.

---

[22] *See Gahagan v. U.S. Citizenship & Immigr. Servs.*, 911 F.3d 298, 302 (5th Cir. 2018) (explaining that the question whether a Supreme Court decision abrogated our precedent "is itself a determination subject to the rule of orderliness" (quotation omitted)).

Under binding precedent, Mullis cannot show cause for his default. For the same reason, that conclusion is not debatable by reasonable jurists.

2.

Mullis's ineffective-assistance-of-postconviction-counsel claim, however, presents a closer question.

As Mullis observes, attorney abandonment, *Maples v. Thomas*, 565 U.S. 266, 288–89 (2012), and constitutionally deficient postconviction representation, *Martinez v. Ryan*, 566 U.S. 1, 17 (2012), are causes external to the defense. Abandonment occurs when an attorney ceases representing his client "without notice." *Maples*, 565 U.S. at 281. And states constitutionally must provide "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Martinez*, 566 U.S. at 14.

Mullis's lawyer did not abandon him—far from it. His state habeas counsel resisted Mullis's efforts to have him fired and continued to seek extensions of Mullis's petition-filing deadline, including by asking the CCA to find good cause for an untimely application after his efforts to persuade Mullis to litigate had failed. Mullis's lawyer also had Mullis evaluated by another psychiatrist to try to vitiate Mullis's waivers of collateral review.

But Mullis's lawyer did not go as far as he might have to prevent Mullis's waiver. For one thing, he did not object to the first psychiatrist's conclusion that Mullis was competent to waive review. In fact, he told the court that he "certainly ha[d] no problem[ ] putting [the psychiatrist's report] into evidence." And he focused his remarks during the hearing on his personal objections to Mullis's decision to waive and Mullis's young age.

All that's to say that Mullis's lawyer effectively conceded that Mullis was competent to waive review—and another psychiatrist later disagreed.

Where an attorney has reason to believe that his client may be

incompetent, effective representation may require him to inquire beyond a clean bill of mental health from a court-appointed psychiatrist. *See Profitt v. Waldron*, 831 F.2d 1245, 1249 (5th Cir. 1987). And at that point, Mullis's only hope of avoiding execution was to be found incompetent to waive collateral review. "To do no investigation at all on an issue that not only implicates the accused's only defense, but also his present competency, is not a tactical decision." *Bouchillon v. Collins*, 907 F.2d 589, 597 (5th Cir. 1990).

That's not to say that Mullis's lawyer necessarily provided inadequate representation by declining to object to the content of the psychiatrist's report. If the available facts would not have prompted a reasonable lawyer to investigate competency further, doing so is unnecessary to render reasonably effective assistance. *Theriot v. Whitley*, 18 F.3d 311, 313 (5th Cir. 1994). Or it may be that Mullis's lawyer had already fully investigated his competency by that point and reasonably concluded that he was competent to waive his right to review. *Cf. Green v. Johnson*, 116 F.3d 1115, 1123 (5th Cir. 1997).

Answering that question requires a fact-intensive application of the all-things-considered "reasonably effective assistance" test. *Washington*, 466 U.S. at 687. Accordingly, the answer is debatable by reasonable jurists. *Roberts v. Dretke*, 356 F.3d 632, 639–40 (5th Cir. 2004).

Two highly related legal questions provide additional debatability. *First*, if Mullis's lawyer inadequately assisted Mullis by not objecting to the psychiatrist's report, was that failure external to Mullis? *Second*, can this court conclude that Mullis's lawyer rendered inadequate assistance, given the evidence it may consider in the wake of *Shinn v. Martinez Ramirez*, 142 S. Ct. 1718 (2022)?

Regarding the first question, we held in *Gonzales*, 924 F.3d at 244, that neither a prisoner's mental incompetency nor his complete rejection of habeas counsel is an external cause that can excuse a default. For the same

reason, counsel's putatively ineffective assistance here might have had a cause internal to Mullis because the lawyer breached an obligation that arose only because Mullis attempted to waive review.

But this case is distinguishable from *Gonzales* because, unlike the petitioner there, Mullis had habeas counsel. *See id.* at 241. And it may be that where a lawyer inadequately defends against an incompetent petitioner's attempts to waive review, the lawyer's inadequate assistance is a superseding cause external to the petitioner. That question is debatable by reasonable jurists, so the court will consider it further.

Regarding the second question, the Supreme Court recently held that, where a petitioner relies on *Martinez v. Ryan* to excuse a procedural default, "a federal court may not hold an evidentiary hearing—or otherwise consider new evidence—to assess cause and prejudice," *Martinez Ramirez*, 142 S. Ct. at 1739, if the petitioner "failed to develop the factual basis of [his] claim in State court proceedings," 28 U.S.C. § 2254(e)(2).

In concluding that Mullis debatably received ineffective assistance of postconviction counsel, we have relied only on material that was presented to the state courts. But Mullis's application references new evidence that could bear on our ultimate analysis. For instance, he contends that the reason Mullis's lawyer did not object to the psychiatrist's report is that he had promised Mullis in advance he would not do so, and he supports that assertion with a declaration that seems to have been filed for the first time in federal court.

*Martinez Ramirez* raises novel questions about the evidence we can consider when we answer the ineffective-assistance question. That legal uncertainty makes the ineffective-assistance question further debatable, which helps Mullis at this stage. But ultimately, *Martinez Ramirez* very likely will reduce the evidence available to Mullis to prove his claim.

In summary, reasonable jurists could debate whether Mullis's habeas

lawyer rendered inadequate assistance by conceding the correctness of the psychiatrist's report. That failure, if it was one, may serve as cause to excuse Mullis's procedural default. *Martinez*, 566 U.S. at 17.

C.

Because Mullis has shown that, in one respect, "jurists of reason would find it debatable whether the district court was correct in its procedural ruling," we must also ask if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack*, 529 U.S. at 484. And because the sole debatable cause for excusing Mullis's default is the *Martinez* exception for ineffective assistance of postconviction counsel, we are limited to constitutional claims concerning the ineffective assistance of trial counsel. *Davila v. Davis*, 137 S. Ct. 2058, 2065–66 (2017).

Mullis claims that his trial counsel was constitutionally inadequate during the penalty phase for "fail[ing] to conduct a comprehensive mitigation investigation" and presenting the jury with "a fraction of the horrors" that Mullis experienced during his life that might have mitigated his responsibility for his crimes. Among other things, Mullis says his trial lawyers could have presented a much fuller picture of the sexual abuse he endured as a child, which was especially relevant because of the sexual nature of his own crimes.

Rendering adequate assistance requires counsel to investigate possible mitigation theories and select one that is reasonable under the circumstances. *See Sears v. Upton*, 561 U.S. 945, 951–54 (2010) (per curiam). Determining whether that standard was met requires a "probing and fact-specific analysis." *Id.* at 955. And although Mullis's crime was horrific, it is not obvious that any potential failure to mitigate did not prejudice him because his tales of an "excruciating life history" may have caused "one juror [to strike] a different balance," *Wiggins v. Smith*, 539 U.S. 510, 537 (2003), in deciding the open-ended question whether anything mitigated his culpability. As the state

trial judge explained to the jury, the mitigation question is, under Texas law, a matter of "opinion" on which reasonable minds differ.

Accordingly, the COA standard is met here for essentially the same reason it is satisfied regarding ineffective assistance during postconviction review: It is plausible that Mullis's counsel prejudicially fell below that standard and a more searching look is required to say for sure.

* * *

The application for a COA is GRANTED IN PART, limited to the following questions: (1) Did Mullis's state habeas counsel render inadequate assistance by conceding that Mullis was competent to waive review? (2) Can the court reach that conclusion based on evidence consistent with *Shinn v. Martinez Ramirez*, 142 S. Ct. 1718 (2022)? (3) If Mullis's state habeas counsel rendered inadequate assistance, was the inadequate assistance a cause external to Mullis? In all other respects, the application for a COA is DENIED.

The Clerk will establish a briefing schedule.