No. 21-70008

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

### TRAVIS JAMES MULLIS,

**Petitioner-Appellant,**

v.

### BOBBY LUMPKIN, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

**Respondent-Appellee.**

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS, GALVESTON DIVISION
USDC No. 3:13-CV-121

---

### APPELLANT'S REPLY BRIEF ON THE MERITS

---

Shawn Nolan
Peter Walker
Federal Community Defender Office
for the Eastern District of Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520
peter_walker@fd.org
shawn_nolan@fd.org

Counsel for Petitioner-Appellant

Dated: January 25, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

ARGUMENT ...................................................................................................... 1

I.  *SHINN V. RAMIREZ* DOES NOT PRECLUDE MULLIS FROM
    EXCUSING HIS PROCEDURAL DEFAULT. ........................................... 1

    A.  *Shinn* Has No Impact on the Evidence Supporting Mullis's
        Procedural Argument. ........................................................................... 1

    B.  Even If Limited to the State-Court Record, Mullis Is Able to
        Establish Cause and Prejudice............................................................ 3

II.  MULLIS IS ABLE TO ESTABLISH CAUSE UNDER
     *MARTINEZ/TREVINO* ............................................................................ 4

    A.  State Habeas Counsel Performed Deficiently. ...................................... 4

    B.  Mullis Was Prejudiced by OCW's Deficient Performance. ............... 11

III.  OCW'S INEFFECTIVE ASSISTANCE WAS "EXTERNAL" TO
      MULLIS ................................................................................................. 14

IV.  THIS COURT SHOULD DISREGARD THE DIRECTOR'S
     ARGUMENTS ON ISSUES NOT CERTIFIED FOR APPEAL. ................ 15

CONCLUSION ................................................................................................. 18

# TABLE OF AUTHORITIES

## Cases

*Bouchillon v. Collins*, 907 F.2d 589 (5th Cir. 1990) ...........................................6, 13

*Coleman v. Thompson*, 501 U.S. 722 (1991)............................................................16

*Crutsinger v. Stephens*, 576 F. App'x 422 (5th Cir. 2014).....................................16

*Gonzales v. Davis*, 924 F.3d 236 (5th Cir. 2019) .....................................................15

*Harper v. Lumpkin*, 19 F.4th 771 (5th Cir. 2021)......................................................3

*Hernandez v. Caldwell*, 225 F.3d 435 (4th Cir. 2000) ............................................18

*Lackey v. Johnson*, 116 F.3d 149 (5th Cir. 1997)....................................................15

*Martinez v. Ryan*, 566 U.S. 1 (2012) ................................................. 2, 5, 14, 15–16

*Mullis v. Lumpkin*, 47 F.4th 380 (5th Cir. 2022) ................................... 5, 16, 17

*Profitt v. Waldron*, 831 F.2d 1245 (5th Cir. 1987) ....................................................5

*Roberts v. Sutton*, 217 F.3d 1337 (11th Cir. 2000)..................................................18

*Segundo v. Davis*, 831 F.3d 345 (5th Cir. 2016) ..................................................9, 11

*Shinn v. Ramirez*, 142 S. Ct. 1718 (2022)...........................................................1, 17

*Shoop v. Twyford*, 142 S. Ct. 2037 (2022)............................................................1, 2

*Tabler v. Stephens*, 588 F. App'x 297 (5th Cir. 2014), *vacated in part on other grounds*, 591 F. App'x 281 (5th Cir. 2015) ....................................................5, 16

*Thompson v. United States*, 732 F.3d 826 (7th Cir. 2013) ....................................15

*Trevino v. Thaler*, 569 U.S. 413 (2013)................................................. 5, 14, 15–16

*Turner v. Epps*, 412 F. App'x 696 (5th Cir. 2011) .................................................11

*Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713 (3d Cir. 2022)...................2

## State Constitutional Provisions

Tex. Const. art. 5, § 5(c) ............................................................................................3

## State Rules

Tex. R. App. P. 72.1...................................................................................................3

**Other Authorities**

ABA Standards for Criminal Justice 4–4.1 cmt (2d ed. 1980)...................................9

*Shinn v. Ramirez*, Brief for the States of Texas, et al., as Amici Curiae in Support
    of Petitioners, No. 20-1009, 2021 WL 797838 (U.S. Feb. 26, 2021) ...................4

## ARGUMENT

**I.**    ***SHINN V. RAMIREZ* DOES NOT PRECLUDE MULLIS FROM EXCUSING HIS PROCEDURAL DEFAULT.**

 **A.**    ***Shinn* Has No Impact on the Evidence Supporting Mullis's Procedural Argument.**

In his Opening Brief, Mullis explained that *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022), does not limit the record before this Court regarding Mullis's ability to overcome his procedural default because, unlike the petitioners in that case, Mullis does not rely on the evidence newly developed in support of his cause argument to also support his underlying ineffective-assistance-of-trial-counsel ("IATC") claim. Each of the Director's two arguments otherwise is baseless.

First, the Director argues the "facts" of *Shinn*[1] fail to support Mullis's position because, in that case, the district court heard certain evidence during a multi-day cause hearing that did not "do[] the double duty of excusing default and supporting an IATC claim," and the Supreme Court nevertheless ruled that the hearing had been improper. ECF 110–1 at 22. But, unlike Mullis, neither *Shinn* petitioner argued that he could establish relief on his underlying IATC claim without relying on *other* evidence newly developed at his cause hearing. By contrast, as the Director

---

[1] Appellant adopts the short form citation for *Shinn* employed by the Supreme Court in *Shoop v. Twyford*, 142 S. Ct. 2037, 2044 (2022).

acknowledges, *none of* Mullis's "new cause evidence" is relied upon in support of his IATC claims. *Id*.

Next, the Director contends that the "rationale" behind *Shinn* fails to support Mullis's position. *Id*. However, the Director recognizes that: (1) *Shinn*'s rationale holds a federal court should not needlessly prolong habeas proceedings by allowing a cause hearing if the petitioner cannot prove his underlying IATC claim without relying on new evidence adduced at that hearing; and (2) Mullis's "new cause evidence doesn't go to his IATC claims." *Id*. at 22–23. Yet the Director makes no attempt to explain how this Court's reliance on Mullis's "new cause evidence" to excuse procedural default would nevertheless needlessly prolong these federal habeas proceedings. Instead, the Director merely cites to two additional cases, each of which further *supports* Mullis's position. *Id*. at 23. The first is *Shoop*, which, as discussed in Mullis's Opening Brief, reaffirms that a federal court may not allow evidentiary development "*just to* assess cause and prejudice" if the petitioner cannot support an underlying claim for relief on the state court record. 142 S. Ct. 2037, 2046 (emphasis supplied). The second is *Williams v. Superintendent Mahanoy SCI*, which *expressly adopts* Mullis's position that a federal court *may* hold a hearing and consider new evidence to overcome a procedural default under *Martinez v. Ryan*, 566 U.S. 1 (2012), so long as the petitioner "prevails on the merits" of the underlying claim "considering only the state court record." 45 F.4th 713, 723–24 (3d Cir. 2022).

**B.     Even If Limited to the State-Court Record, Mullis Is Able to Establish Cause and Prejudice.**

Although the Director fails to successfully argue that *Shinn* impacts Mullis's cause evidence, even assuming *Shinn* applies, Mullis is able to overcome procedural default based on the state court record alone. In arguing otherwise, the Director takes issue with Mullis's reliance on the motion he filed with the Texas Court of Criminal Appeals ("CCA") under Article 11.071 § 4A ("4A Motion") and his Motion for Leave to File Petition for Original Writ of Habeas Corpus ("Original Writ Petition"), suggesting that neither was presented "in compliance with state procedural rules." ECF 110–1 at 25. However, the CCA expressly *invited* Mullis to file the 4A Motion and nothing in its opinion denying the relief sought implies that the motion was improperly filed. *See* ROA.11124–26; ROA.11131–33. Nor is there anything in the CCA's summary denial of Mullis's Original Writ Petition suggesting that pleading failed to comply with state procedural rules. *See* ROA.11457; *cf.* Tex. R. App. P. 72.1 (specifying procedure for seeking leave to file original writ petition); Tex. Const. art. 5, § 5(c) (granting CCA jurisdiction to issue writ of habeas corpus).

Furthermore, the case relied upon by the Director, *Harper v. Lumpkin*, 19 F.4th 771 (5th Cir. 2021), is inapposite. In *Harper*, the federal habeas petitioner sought to support a claim for relief using evidence that was: (1) belatedly submitted in state habeas proceedings in support of a claim that had already been dismissed on direct appeal; and (2) never considered by the state court, for any purpose. *Id.* at 781.

3

Here, Mullis relies on evidence that: (1) was timely submitted in support of properly-filed motions in state court; and (2) as related to the 4A Motion, was considered by the state court in determining whether Mullis had established "good cause" for failing to file a timely petition; i.e., for the same purpose that Mullis submits it here. Notably, the Texas Attorney General has expressly recognized that "evidence developed in state court" for such purposes as "overcome[ing] a state procedural bar, can be considered in federal court . . . consistent with [28 U.S.C. §] 2254(e)(2)." *See Shinn v. Ramirez*, Brief for the States of Texas, et al., as Amici Curiae in Support of Petitioners, No. 20-1009, 2021 WL 797838, at *16 (U.S. Feb. 26, 2021).

## II.   MULLIS IS ABLE TO ESTABLISH CAUSE UNDER *MARTINEZ/TREVINO.*

The Director next argues that Mullis fails to establish cause to excuse his procedural default "regardless of the scope of the record reviewed." ECF 110–1 at 26. Again, the Director's arguments are meritless.

### A.   State Habeas Counsel Performed Deficiently.

Regarding cause, the Response begins by challenging this Court's finding that a state habeas attorney who "has reason to believe that his client may be incompetent" may perform ineffectively by failing to "inquire beyond a clean bill of mental health from a court-appointed psychiatrist." *Id.* at 33–34. Indeed, the Director denies that state habeas counsel, the Office of Capital Writs ("OCW"), had *any duties* regarding Mullis's competency to waive habeas, as there is no constitutional

4

right to state habeas counsel or to competency during state habeas proceedings. *Id.* at 34–35; 37–38. But here, Mullis was in fact represented by state habeas counsel and the state habeas court did in fact order that Mullis's competency be evaluated. Hence, the relevant question is whether Mullis is able to establish cause under *Martinez* and *Trevino v. Thaler*, 569 U.S. 413 (2013), by showing that OCW's "representation fell below an objective standard of reasonableness." *Tabler v. Stephens*, 588 F. App'x 297, 304 (5th Cir. 2014), *vacated in part on other grounds*, 591 F. App'x 281 (5th Cir. 2015). Mullis's Opening Brief makes clear that it did, as ethical guidelines and caselaw in place at the time mandated that capital counsel thoroughly investigate competency and not simply acquiesce in a client's desire to be executed, but OCW failed to perform the requisite investigation and conceded their client's ability to validly waive, ECF 96–1 at 26–34, even though Mullis's "only hope of avoiding execution was to be found incompetent to waive collateral review," *Mullis v. Lumpkin*, 47 F.4th 380, 392 (5th Cir. 2022). Nothing in the Director's exposition on the differences between a criminal trial and state habeas proceedings establishes otherwise.

Next, the Director seeks to distinguish this case from *Profitt v. Waldron*, 831 F.2d 1245 (5th Cir. 1987), on the grounds that "Mullis was never found incompetent prior to his waiver hearing, and the properly developed state court record doesn't suggest that OCW knew to the contrary." ECF 110–1 at 36. In support, the Director

cites to the fact that counsel had "talked with" one of the trial attorneys and the trial mental health experts, and "found nothing making them believe that Mullis was then-presently incompetent." *Id.* But the record does not demonstrate that counsel spoke to any of these individuals, or anyone else, regarding Mullis's waiver specifically. To the contrary, affidavits in the state court record from the trial mental health experts suggest that, had they been asked, they would have expressed concerns about Mullis's ability to competently and validly waive habeas review. ROA.11542–50.[2] Moreover, the Director's position that OCW had no reason to doubt Mullis's competency to validly waive is plainly refuted by the fact that OCW expressly requested that the court order a mental health evaluation prior to accepting the waiver. *See* ROA.11370–73; *see also* ROA.3147 (attorney Levenson describing his client's competency as "questionable").

The Director fares no better in attempting to distinguish this case from *Bouchillon v. Collins*, 907 F.2d 589, 597 (5th Cir. 1990), in which counsel performed "no investigation of any kind" into competency, as nothing in the record supports the Director's implication that counsel here performed any better. Aside from a vague reference to OCW "talking with" trial counsel and the trial mental health

---

[2] Although these affidavits were submitted in support of the Original Writ Petition and concern Mullis's waiver of direct appeal, nothing suggests the experts' opinions would have been different if asked about waiver of state habeas proceedings.

experts, the Director's attempt to distinguish *Bouchillon* relies on the fact that OCW "communicated with Dr. Scarano before, during, and after Mullis's evaluation for competence" and "'thoroughly' reviewed" Dr. Scarano's report, ECF 110–1 at 36–37, neither of which amounts to an "investigation of any kind" into Mullis's competency.

The Director then tries to bury the topic of OCW's mental health investigation altogether by arguing that the "properly constructed state court record" does not "explain the scope" of that investigation. ECF 110–1 at 42. But in fact, even the unduly circumscribed record championed by the Director demonstrates the paltry scope of OCW's mental health inquiry, as counsel acknowledged at the competency hearing that they had "had some opportunity" to investigate up to that point, "but certainly not enough time." ROA.1206–07. More specifically, counsel had "started the investigative process" but had not conducted any out-of-state investigation, which would have included speaking to witnesses with information relevant to Mullis's mental health; had not completed a review of trial counsel's file; and had not reviewed the trial transcripts. ROA.1207–08; *see also* ROA.1195–96 (OCW repeating similar description of the scope of investigation that had been completed, and adding that they had not reviewed the files of trial mental health experts or contacted a psychologist who consulted with trial counsel but did not testify). The Director also pretends that it is impossible to say what evidence would have been

discovered had counsel performed effectively, objecting to Mullis's reliance on the trial transcripts to demonstrate the information known to the trial mental health experts because those transcripts were not yet available to OCW at the time they filed the motion to waive. ECF 110–1 at 43–44. Yet the Director also denies that OCW performed deficiently in failing to wait for the trial transcripts before seeking to secure Mullis's waiver. *Id.* at 41. Given that reasonable counsel would have consulted the trial mental health experts regarding Mullis's desire to waive state habeas *and* postponed filing the waiver motion at least until after the trial transcripts had been produced, the Director's attempt to use OCW's ineffectiveness to the State's advantage in these proceedings should be rejected.

Unable to credibly argue that OCW thoroughly investigated Mullis's mental health, the Director next offers various excuses for their failure to do so. For instance, the Director attempts to justify the inadequate investigation by arguing that the timing of the competency hearing was "dictated by Millis's recent waiver of direct appeal counsel," as that "hastened the due date of his state habeas application." *Id.* at 31. But OCW expressly argued in the motion to waive—which was filed in September 2011—that any waiver would not be effective until after the state habeas deadline had passed, which was still months away. ROA.11372. The Director's alternative timing argument—that Mullis "controlled when he wanted to waive" and OCW was powerless to "control the scheduling preferences of their client," ECF

110–1 at 42—also fails. A "lawyer's duty to investigate is virtually absolute, regardless of a client's expressed wishes," ABA Standards for Criminal Justice 4– 4.1 cmt. at 4–55 (2d ed. 1980), and OCW was not in a position to adequately advise Mullis or the court regarding the waiver when they filed the motion on Mullis's behalf, *see* ECF 96–1 at 31–34. Yet there is no evidence that OCW even attempted to delay that filing. To the contrary, counsel drafted the motion and presented it to Mullis after receiving a letter indicating that he had questions to discuss in person *before* making any final wavier decision, ROA.4344, and they filed the motion *the day after* securing Mullis's signature on the accompanying affidavit, ROA.11370– 73. Nor were OCW's investigative failures excused, as the Director contends, by CCA precedent holding that "taxpayers shouldn't have to pay for[] appointed counsel when the applicant doesn't want representation." ECF 110–1 at 31. Counsel's duty was to their client, not to the taxpayers.

Finally, the Director argues that, regardless of OCW's failure to investigate their client's mental health prior to conceding in Dr. Scarano's opinion, counsel "went beyond what was required of them" simply by "obtaining and working with an expert to assess Mullis's competence." *Id.* at 39. The Director supports this position by describing Dr. Scarano as "*OCW's expert*" in "all but name" and citing to *Segundo v. Davis*, 831 F.3d 345 (5th Cir. 2016), for the proposition that counsel performs effectively in relying on the opinions of *defense* mental health experts who

had been retained by *the defense*. ECF 110–1 at 39; *see also id.* at 52 (arguing "it was reasonable for counsel to rely on what was, effectively, their expert"). But the evidence barely supports that OCW "obtain[ed]" or "work[ed] with" Dr. Scarano, and in no way supports that Dr. Scarano was tantamount to a defense expert. In terms of "obtaining" Dr. Scarano, OCW did no more than request that the court appoint "a mental health expert," ROA.1229, making no effort to ensure that expert was qualified or would be neutral, let alone favorable to the defense. As for "working with" Dr. Scarano, OCW provided the expert with limited records, but nowhere near the entirety of relevant evidence that was or would have been available to reasonable counsel at the time. *See* ECF 96–1 at 13 (describing documents that could have been provided to Dr. Scarano, including hundreds of pages of Mullis's childhood medical records documenting his repeated diagnoses for various mental disorders such as posttraumatic stress disorder, bipolar disorder, and major depression; his three psychiatric hospitalizations for suicidal ideation; or the files and notes of the trial mental health experts). And although Levenson claimed to have had "multiple" conversations of unspecific length and substance with Dr. Scarano, ROA.6916, the only specific discussion reflected in the record—which consisted of Levenson identifying significant flaws in Dr. Scarano's report that went uncorrected, ROA.3147—hardly supports that Dr. Scarano was "OCW's expert." Meanwhile, the Director fails to demonstrate that the district attorney did not "work[] with" Dr.

10

Scarano to the same extent or to an even greater extent than OCW, in which case he could just as easily be described as "the State's expert." In short, Dr. Scarano is hardly on par with the mental health experts retained by the defense in *Segundo*, who "conducted multiple interviews with Segundo and his family, performed psychological evaluations, and reviewed medical records." 831 F.3d at 352. In any event, the Director's position is legally unsustainable, as "counsel cannot completely abdicate a responsibility to conduct" necessary investigation "simply by hiring an expert." *Turner v. Epps*, 412 F. App'x 696, 704 (5th Cir. 2011).

### B.    Mullis Was Prejudiced by OCW's Deficient Performance.

Turning to prejudice, the Director begins by arguing that, because "state law may not require competence to waive the habeas process," Mullis "can't show a reasonable probability that the state habeas trial court would've required competence to waive" *even if* Dr. Scarano and/or the court had found him incompetent. ECF 110–1 at 42. But this position relies on a patently unreasonable assumption, namely, that the state habeas court appointed a taxpayer-funded expert to evaluate competency and held a competency hearing all as a mere pretense.

The Director also complains that "there's no testimony from [Dr. Scarano] in state court—or anywhere else—that he would've" changed his opinion had counsel performed effectively. *Id*. Of course, the absence of any such testimony in the state court record is itself a product of OCW's ineffectiveness, and Mullis was never given

the opportunity to develop this evidence in federal court, despite having requested an evidentiary hearing on cause and prejudice. *See* ROA.4262–63. In any event, Mullis is not required to demonstrate prejudice with evidence from Dr. Scarano, as he demonstrates a reasonable probability of a different outcome through evidence from various other experts, and the Director's attempts to denigrate that evidence are unconvincing.

First, as this Court has recognized and Mullis discusses in his Opening Brief, OCW was able to produce an expert opinion from Dr. Fuller concluding that Mullis was not competent to waive for purposes of the 4A Motion, which demonstrates they could have done the same at the time of the waiver. The Director offers various objections to Dr. Fuller's report, but ultimately fails to respond to the argument that, in light of the state habeas court's view that it was unwise for Mullis to waive review months before his application became due, *see* ROA.1218, there is a reasonable probability that Dr. Fuller's report alone would have caused the court to conclusively deny the motion to waive. This is particularly compelling given that the state habeas court expressly considered not only whether Mullis was competent to waive, but also whether he was doing so knowingly, intelligently, and voluntarily. *See* ROA.11392. The Director also fails to respond to Mullis's argument that Dr. Fuller could have offered a much stronger opinion had OCW completed a reasonably thorough investigation. To the extent Mullis has provided insufficient evidence to substantiate

this allegation, the fault lies with the district court, which denied an evidentiary hearing on cause despite Mullis having presented an affidavit from Dr. Fuller stating he would be willing to review additional records and revisit his evaluation in light of that evidence. ROA.4260.

Second, the Director criticizes the evidence from Drs. Mendel, Dudley, Brams, and Reynolds because none definitively concluded that Mullis was incompetent at the time of the October 2011 competency hearing. ECF 110–1 at 46–47; *see also id.* at 53 (arguing that, because "Mullis does not produce any expert report finding him retroactively [in]competent when he waived habeas review," he "has not shown that the result would have been different"). But Mullis is not required to conclusively prove the outcome of the hearing "would have been different;" he need only make a showing "sufficient to undermine confidence in the outcome" of competency proceedings, which is a "lower burden of proof than the preponderance standard." *Bouchillon*, 907 F.2d at 595. He does this with the evidence discussed at length in his Opening Brief.

Finally, the Director complains that Dr. Reynolds's report focuses only on whether Mullis's waiver was voluntary, as opposed to whether he was competent. ECF 110–1 at 52. As support, the Director cites to this Court's earlier opinion rejecting that Mullis's claim that his waiver was involuntary could serve as "cause" to excuse his procedural default. *Id*. But here, Mullis relies on Dr. Reynolds's report

to prove OCW's ineffectiveness under *Martinez/Trevino*. And, given that both Dr. Scarano and the state habeas court expressly considered voluntariness in addition to competency, *see* ROA.1260; ROA.11392, evidence such as that presented from Dr. Reynolds is reasonably likely to have influenced the conclusions of either Dr. Scarano and/or the court.

## III.   OCW'S INEFFECTIVE ASSISTANCE WAS "EXTERNAL" TO MULLIS.

In response to the final issue certified in this appeal, the Director argues that even if OCW was ineffective, Mullis cannot excuse his procedural default because "Mullis effected the waiver of his state habeas proceeding." ECF 110–1 at 55. However, each of the arguments forwarded in support of this position necessarily assumes Mullis's competency to validly waive counsel and state habeas review,[3] and for purposes of this appeal, OCW's failures and the resulting prejudice all *preceded* the state habeas court's October 2011 decision determining that Mullis was competent to validly waive. Accordingly, Mullis may rely on OCW's ineffective assistance to overcome procedural default assuming he meets the test established by

---

[3] *See, e.g.*, ECF 110–1 at 56 ("[E]ven if OCW was ineffective for not challenging Mullis's competence to waive, he alone chose not to file a habeas application, which effectuated the waiver of process under state law."); *id.* at 57 ("[W]hen the waiver of process was effectuated by the failure to file a timely application, Mullis was proceeding pro se."); *id.* (counsel's actions cannot be ineffective "when it's requested by the client").

*Martinez* and *Trevino*. Arguing that OCW's ineffective performance is irrelevant to the procedural default determination ignores not only the law as established by *Martinez* and *Trevino*, but also this Court's determination in *Gonzales v. Davis*, 924 F.3d 236, 244 n.3 (5th Cir. 2019), that the "*Martinez/Trevino* exception to cause and prejudice" was unavailable to the petitioner in that case "*because*" he failed to accept state habeas counsel from the beginning.

## IV.    THIS COURT SHOULD DISREGARD THE DIRECTOR'S ARGUMENTS ON ISSUES NOT CERTIFIED FOR APPEAL.

The remainder of the Director's arguments exceed the scope of the three limited issues certified for appeal by this Court and should therefore be disregarded. *See, e.g.*, *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) ("COAs are granted on an issue-by-issue basis, thereby limiting appellate review to those issues alone."); *Thompson v. United States*, 732 F.3d 826, 831–32 (7th Cir. 2013) ("[A] lawyer who wishes to raise claims that are outside the scope of the certificate of appealability 'should not simply brief the additional claims, but should first request permission to do so.'"). Even if the arguments are considered, however, they are without merit.

First, the Director argues that Mullis has forfeited a finding of "actual prejudice," which the Director claims to be "a necessary component to overcoming procedural default." ECF 110–1 at 49, 51. But *Martinez* and *Trevino* require no such showing. To the contrary, in *Trevino*, the Court held that a petitioner's procedural default may be overcome under the cause and prejudice standard articulated in

15

*Coleman v. Thompson*, 501 U.S. 722 (1991), "so long as four elements are met,"

namely:

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being . . . "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "[IATC] claim"; and (4) state law requires that an "[IATC claim be raised on collateral review]."

*Trevino*, 569 U.S. at 423 (quoting *Martinez*, 566 U.S. at 13–16); *see also Tabler*,

588 F. App'x at 305 ("To fall within the *Martinez* exception and avoid procedural

default of any [IATC] claim, Tabler must demonstrate (1) that his state habeas

counsel were ineffective. . ., and (2) 'that the underlying [IATC] claim is a

substantial one.") (quoting *Martinez*, 566 U.S. at 14). There is no mention of an

additional "actual prejudice" inquiry in either *Martinez* or *Trevino*.

The Director also argues that Mullis has forfeited any claim that he satisfies

the substantiality prong of *Martinez/Trevino*. But, as addressed in Mullis's Opening

Brief, "substantiality" under *Martinez/Trevino* is "equivalent to the standard for

obtaining a COA," and this Court already found that reasonable jurists could debate

at least one of Mullis's defaulted IATC claims, namely, whether trial counsel

performed ineffectively by failing to investigate and present available mitigating

evidence. ECF 96–1 at 25 (citing *Crutsinger v. Stephens*, 576 F. App'x 422, 430 (5th

Cir. 2014), and *Mullis*, 47 F.4th at 393). Given this finding, and because none of the

three specific issues certified for appeal contain any mention of "prejudice," Mullis

reasonably understood that the Court did not require further briefing on that issue. To the extent Mullis misconstrued the Court's prior opinion, he respectfully requests that the Court employ its "discretion to forgive any forfeiture." *Shinn*, 142 S. Ct. at 1730 n.1. He further submits that *Martinez* substantiality is a low bar that he meets because, as this Court already determined, "it is not obvious that any potential failure to mitigate did not prejudice him because his tales of an excruciating life history may have caused one juror [to strike] a different balance, in deciding the open-ended question whether anything mitigated his culpability." *Mullis*, 47 F.4th at 393 (internal quotation marks and citation omitted).

Finally, the Director argues that Mullis is not entitled to relief on his IATC claims. But, as this Court recognized in finding some merit in Mullis's IATC penalty-phase claim, "[r]endering adequate assistance requires counsel to investigate possible mitigation theories and select one that is reasonable under the circumstances," and "[d]etermining whether that standard was met requires a probing and fact-specific analysis." *Id.* (internal quotation marks and citation omitted). The same "probing and fact-specific analysis" is required for the remainder of Mullis's IATC claims. Thus, assuming this Court overrules the lower court's procedural ruling, the proper approach is to remand so that the district court may consider Mullis's substantive claims in the first instance. *See, e.g., Hernandez v.*

*Caldwell*, 225 F.3d 435, 440 (4th Cir. 2000); *Roberts v. Sutton*, 217 F.3d 1337, 1341 (11th Cir. 2000).

## CONCLUSION

For the foregoing reasons and those contained in Mullis's Opening Brief, this Court should reverse the district court's order, excuse any default of Mullis's substantial IATC claims based on the ineffective assistance of his state habeas counsel, and remand to the district court for consideration of those claims in the first instance.

Respectfully submitted,

/s/ Peter Walker
Peter Walker
Shawn Nolan
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520
peter_walker@fd.org
shawn_nolan@fd.org

Counsel for Petitioner-Appellant

Dated: January 25, 2023

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMIT

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted from Fed. R. App. P. 32(f), this document contains 4,304 words.

This motion complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman.

/s/ Peter Walker
Peter Walker

Dated: January 25, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused the foregoing to be served on the following person by electronic filing:

Matthew Ottoway, Assistant Attorney General
Office of the Attorney General of Texas
Post Office Box 12548
Austin, Texas 78711-2548
Matthew.ottoway@oag.texas.gov

/s/ Peter Walker
Peter Walker

Dated: January 25, 2023