No. 21-70008

# In the United States Court of Appeals for the Fifth Circuit

Travis James Mullis,

*Petitioner-Appellant,*

*v.*

Bobby Lumpkin, Director, Texas Department of Criminal Justice, Correctional Institutions Division,

*Respondent-Appellee.*

On Appeal from the United States District Court
for the Southern District of Texas, Galveston Division

## PETITION FOR REHEARING EN BANC

John Scott
Provisional Attorney General

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Lanora C. Pettit
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

Natalie D. Thompson
Assistant Solicitor General

Matthew Ottoway
Assistant Attorney General

Counsel for Respondent

# Certificate of Interested Persons

No. 21-70008

Travis James Mullis,

Petitioner-Appellant,

*v.*

Bobby Lumpkin, Director, Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent-Appellee.

Under the fourth sentence of Fifth Circuit Rule 28.2.1, respondent, as a governmental party, need not furnish a certificate of interested persons.

/s/ Lanora C. Pettit
Lanora C. Pettit
*Counsel of Record for Respondent*

i

## Introduction and Rule 35(b) Statement

The panel reached the correct conclusion: it denied Travis Mullis's request for federal habeas relief from his capital sentence for the sexual assault and murder of his infant son. But in doing so, the panel held that as a matter of this Court's strict rule of orderliness, 28 U.S.C. section 2254(e)(2)'s bar on evidentiary development in federal habeas court does not apply to "showings that a procedural default is excused," *Mullis v. Lumpkin*, No. 21-70008, 2023 WL 4057540, Slip Op. 4 (5th Cir. June 19, 2023) ("Slip Op."), notwithstanding the Supreme Court's recent statement that federal courts are not to allow such a hearing, *Shinn v. Ramirez*, 142 S. Ct. 1718, 1737 (2022); *see also Shoop v. Twyford*, 142 S. Ct. 2037 (2022). The panel recognized the tension between this Court's rule and that announced by the Supreme Court, Slip Op. 4, and that there is a circuit split over whether the Supreme Court's recent decisions abrogate earlier precedent. *See id.* at 7 n.5. But the panel considered itself bound by prior circuit precedent. *Id.* at 6-7.

Although it is unusual for a prevailing party to seek en banc review, it is permissible. Fed. R. App. P. 35(b) ("*A* party may petition for a hearing or rehearing en banc.") (emphasis added); *cf. Camreta v. Greene*, 563 U.S. 692, 702-03 (2011). And, here, it is appropriate. By stating that it could not follow contrary guidance from the Supreme Court about when evidentiary development is permissible regarding a federal habeas petition, the panel acknowledged that en banc review is necessary to avoid conflict with Supreme Court precedent—not to mention maintain uniformity of this Court's precedent governing the weight given to ostensible dicta from the Supreme Court. *See* Fed. R. App. P. 35(b)(1)(A). And by stating it could not "tak[e]

sides" in a growing circuit split regarding how to interpret *Ramirez*, the panel acknowledged that the question is of exceptional importance. Slip Op. 7 n.5; *see* Fed. R. App. P. 35(b)(1)(B).

En banc review is necessary. As a result of the panel's rule, a host of state prisoners seeking federal habeas relief can—and have—demanded hearings in the district courts regarding undisputedly defaulted claims just to determine whether their state habeas counsel provided ineffective representation in declining to bring those claims. In all likelihood, those claims will ultimately fail because—like Mullis's—they are without merit. Nevertheless, as a direct result of the panel's application of the rule of orderliness, litigating each of these baseless petitions will cost both district courts and the State enormously in terms of time and treasure. All the while, victims' families will be forced to watch justice grow stale. The interests of justice and judicial economy would be best served by taking up the matter now, before the judicial system expends innumerable resources developing and considering evidence that the Supreme Court has said is barred under section 2254(e)(2).

# Table of Contents

Page

Certificate of Interested Persons ...............................................................i

Introduction and Rule 35(b) Statement ...................................................ii

Table of Authorities ...................................................................................v

Issue Presented .......................................................................................... 1

Course of Proceedings and Statement of Facts......................................... 1

    I.    After the State Court Found Mullis Competent, He Waived All
State Post-Conviction Proceedings. ............................................. 1

    II.    This Court Allowed Mullis to Appeal the Denial of a Defaulted
*Wiggins* Claim Under *Martinez v. Ryan.* ...................................2

    III.    The Panel Denied Relief, But Only After Allowing Federal
Habeas Petitioners to Offer New Evidence to Support Cause and
Prejudice Without Regard to *Ramirez* or 28 U.S.C. Section
2254(e)(2).................................................................................... 6

Argument.................................................................................................... 7

    I.    Review Is Needed to Align This Court's Precedent With that of
the Supreme Court. ...................................................................... 8

    II.    En Banc Review Is Also Warranted to Align Circuit Precedent
with the Correct Side of the Circuit Split Over the Impact of
*Ramirez*.................................................................................... 10

Conclusion................................................................................................ 13

Certificate of Service............................................................................... 14

Certificate of Compliance ....................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Amschwand v. Spherion Corp.*,
505 F.3d 342 (5th Cir. 2007) ................................................. 9

*Campaign for S. Equal. v. Bryant*,
791 F.3d 625 (5th Cir. 2015) ................................................. 9

*Camreta v. Greene*,
563 U.S. 692 (2011) ................................................................ ii

*Charles v. Stephens*,
736 F.3d 380 (5th Cir. 2013) ........................................... 6, 11

*CIGNA Corp. v. Amara*,
563 U.S. 421 (2011) ................................................................ 9

*Clay v. United States*,
537 U.S. 522 (2003) .............................................................. 10

*Cole v. Lumpkin*,
No. 21-70011, 2022 WL 3710723 (5th Cir. Aug. 26, 2022) (per
curiam), *pet. for certiorari docketed* (Mar. 7, 2023) ......................... 8, 9

*Cullen v. Pinholster*,
563 U.S. 170 (2011) .............................................................. 10

*Davila v. Davis*,
582 U.S. 521 (2017) .............................................................. 11

*Dolgencorp, Inc. v. Miss. Band of Choctaw Indians*,
746 F.3d 167 (5th Cir. 2014) (Smith, J., dissenting) ............................ 9

*Gahagan v. USCIS*,
911 F.3d 298 (5th Cir. 2018) ............................................... 12

*Gearlds v. Entergy Sers., Inc.*,
709 F.3d 448 (5th Cir. 2013) ................................................. 9

*Harrington v. Richter*,
562 U.S. 86 (2011) ................................................................. 4

*Hollis v. Lynch*,
827 F.3d 436 (5th Cir. 2016) ................................................. 9

*Martinez v. Ryan*,
566 U.S. 1 (2012) .......................................................... *passim*

*Matthews v. Davis,*
    665 F. App'x 315 (5th Cir. 2016) ...............................................4

*Mullis v. Lumpkin,*
    47 F.4th 380 (5th Cir. 2022) ............................................ 1, 2, 3, 4, 5

*Mullis v. Lumpkin,*
    No. 21-70008, 2023 WL 4057540 (5th Cir. June 19, 2023) .........................*passim*

*Nelson v. Lumpkin,*
    No. 17-70012 (5th Cir. June 30, 2023) ...............................................8

*Newbury v. Stephens,*
    756 F.3d 850 (5th Cir. 2014) ...............................................3

*Profitt v. Waldron,*
    831 F.2d 1245 (5th Cir. 1987) ...............................................4

*Ramirez v. Davis,*
    780 F. App'x 110 (5th Cir. 2019) ...............................................4

*Segundo v. Davis,*
    831 F.3d 345 (5th Cir. 2016) ................................... 4, 6, 10

*Shinn v. Martinez Ramirez,*
    142 S. Ct. 1718 (2022) ...............................................*passim*

*Shoop v. Twyford,*
    142 S. Ct. 2037 (2022) ................................... ii, 8, 12

*Shore v. Davis,*
    845 F.3d 627 (5th Cir. 2017) ...............................................6

*Stokes v. Stirling,*
    64 F.4th 131 (4th Cir. 2023) ...............................................12

*Strickland v. Washington,*
    466 U.S. 668 (1984) ................................... 3, 5

*Tong v. Lumpkin,*
    825 F. App'x 181 (5th Cir. 2020) ...............................................11

*Trevino v. Thaler,*
    569 U.S. 413 (2013) ...............................................3

*United States v. Vargas-Soto,*
    35 F.4th 979 (5th Cir. 2022) ...............................................3

*Wanwright v. Sykes,*
    433 U.S. 72 (1977) ...............................................3

*Washington v. Davis,*
    715 F. App'x 380 (5th Cir. 2018) ...............................................11

*Wiggins v. Smith,*
   539 U.S. 510 (2003) ............................................................ 2, 3
*Williams v. Superintendent Mahanoy SCI,*
   45 F.4th 713 (3d Cir. 2022) ........................................... 11, 12
*Williams v. Taylor,*
   529 U.S. 420 (2000) .................................................................. 8

## Statutes and Rules:

28 U.S.C. § 2254(e)(2) ........................................................*passim*
Fed. R. App. P.:
   35(a)(1) ...................................................................................... 7
   35(b) ........................................................................................... ii
   35(b)(1)(A) ............................................................................ ii, 9
   35(b)(1)(B) ................................................................. iii, 10, 12
Sup. Ct. R. 10(c) .................................................................... 10

## Other Authorities:

Reply in Support of Motion for Discovery, *Rubio v. Lumpkin,*
   No. 1:18-cv-00088 (S.D. Tex. June 23, 2023), ECF No. 92 .............................. 12
*Tabler v. Lumpkin,*
   No. 22-70001 (5th Cir.) ....................................................... 12

## ISSUE PRESENTED

Whether en banc review is necessary to conform this Court's precedent to (1) recent Supreme Court authority interpreting 28 U.S.C. section 2254(e)(2), and (2) the precedent of this Court's sister circuits that have read *Ramirez* to bar a federal court from considering evidence that is outside the state record even when a petitioner pursues a claim under *Martinez v. Ryan*, 566 U.S. 1 (2012).

## COURSE OF PROCEEDINGS AND STATEMENT OF FACTS

### I. After the State Court Found Mullis Competent, He Waived All State Post-Conviction Proceedings.

In granting a certificate of appealability, this Court summarized the relevant facts about how "Travis Mullis sexually assaulted and murdered his infant son." *Mullis v. Lumpkin*, 47 F.4th 380, 383 (5th Cir. 2022) ("*Mullis I*"). After the jury found Mullis guilty of capital murder and that he "likely would commit future violent acts and that nothing mitigated his culpability," the "trial court sentenced him to death." *Id.* "Mullis neither appealed that conviction and sentence nor timely filed a state habeas petition." *Id.*

Mullis "flip-flopped time and time again about whether to waive his right to challenge his conviction and sentence—both directly and collaterally—and his desire to pursue those challenges *pro se*." Slip Op. 2. "The *volte-face* at issue" in this habeas petition "was Mullis's attempt to waive state collateral review and to act *pro*

*se* in any future decisions regarding the filing of a habeas petition." *Id.* As summarized by the panel:

> Although Mullis's habeas attorneys objected to his decision to waive collateral review, they did not object to a report by a psychiatrist, Dr. Victor Scarano, finding that Mullis was mentally competent to make it. [After holding a hearing, t]he state court allowed Mullis "to act *pro se* regarding any decisions concerning waiver and/or filing a post-conviction writ of habeas corpus," although the court also allowed the [counsel] to "continue to investigate and prosecute" a writ subject to Mullis's consent (which he was withholding at the time).

*Id.* (quoting ROA.11392). Mullis continued to withhold that consent, and he never filed a state habeas application. *See id.* When counsel later asked the Court of Criminal Appeals to excuse Mullis's failure to file, that Court denied the request. ROA.11130-34.

## II. This Court Allowed Mullis to Appeal the Denial of a Defaulted *Wiggins* Claim Under *Martinez v. Ryan*.

Despite having waived appeal and state collateral review, Mullis "filed a federal habeas petition asking the district court to disregard or excuse his procedural default." *Mullis I*, 47 F.4th at 383. He argued (*inter alia*) that his trial counsel insufficiently investigated potential mitigation under *Wiggins v. Smith*, 539 U.S. 510 (2003). *Id.* at 393. Specifically, Mullis asserted trial counsel did not adequately investigate and present the jury with sufficient evidence of childhood trauma that Mullis suffered. *Id.* The district court denied habeas relief because it concluded Mullis could not show ineffective assistance by his state habeas counsel, and thus could not excuse his procedural default under *Martinez*. *See* ROA.4547-52.

Although the COA panel allowed Mullis to appeal the denial of his *Wiggins* claim, *Mullis I*, 47 F.4th at 393, "the parties . . . agree that Mullis' claims are procedurally barred." ROA.4535. As a result, the COA panel explained, Mullis cannot pursue any claim without showing "'cause' for and 'prejudice' from the default." *Mullis I*, 47 F.4th at 390 (quoting *Wanwright v. Sykes*, 433 U.S. 72, 87 (1977)). To do so, Mullis "must identify 'some objective factor external to the defense [that] impeded counsel's efforts to comply with the relevant procedural rule.'" *Id.* (quoting *United States v. Vargas-Soto*, 35 F.4th 979, 993 (5th Cir. 2022)).

The panel recognized that "Mullis's [state habeas] lawyer did not abandon him." *Mullis I*, 47 F.4th at 391. To the contrary, state habeas counsel "resisted Mullis's effort to have [counsel] fired." *Id.* Ultimately, however, counsel was required to follow Mullis's instructions not to pursue any claims. *Id.* at 383. But the COA panel allowed Mullis to pursue his cause-and-prejudice argument under *Martinez. Mullis I*, 47 F.4th at 392. *Martinez* holds that procedural default of an ineffective-assistance-of-trial-counsel claim is excused if state habeas was the prisoner's first opportunity to raise such a claim, and the prisoner can show that his state habeas counsel was ineffective under the *Strickland v. Washington*, 466 U.S. 668 (1984), standard. *Martinez*, 566 U.S. at 14-17; *see also Trevino v. Thaler*, 569 U.S. 413, 429 (2013) (applying *Martinez* to Texas proceedings). Because such claims have become ubiquitous in the ten years since *Martinez*, the standard is well established: the claimant must show that any reasonable habeas lawyer would have raised the underlying IATC claim, and that he suffered prejudice as a result. *E.g.*, *Newbury v. Stephens*, 756 F.3d 850, 872 (5th Cir. 2014) (per curiam). This often involves an

assessment of the merits of the underlying IATC claim. *See, e.g.*, *Ramirez v. Davis*, 780 F. App'x 110, 119 (5th Cir. 2019); *Segundo v. Davis*, 831 F.3d 345, 351–52 (5th Cir. 2016); *Matthews v. Davis*, 665 F. App'x 315, 322 (5th Cir. 2016) (per curiam). But because Mullis forbade his lawyers from bringing any habeas claims, Mullis argues that counsel was ineffective for inadequately opposing his competence to waive state habeas proceedings. *Mullis I*, 47 F.4th at 391. "Had [counsel] done so," Mullis insists, "there was a reasonable probability that the state court would not have found Mullis competent to waive habeas review and to proceed *pro se*. Thus, habeas counsel was ineffective." Slip Op. 3.

Citing *Harrington v. Richter*, 562 U.S. 86, 108 (2011), the district court rejected this theory because "Mullis has not shown that any additional actions by habeas counsel would have changed his choice to waive review," and "[a] court cannot fault counsel for not investigating matters which his client will never let him litigate." ROA.4551. Regarding competency, the district court noted that counsel asked the state habeas court to appoint a mental health expert to assess Mullis's competency and that expert concluded Mullis was competent to waive his rights. ROA.4517-20.

Citing *Profitt v. Waldron*, 831 F.2d 1245 (5th Cir. 1987), the COA panel concluded state habeas counsel's performance was sufficiently debatable to allow a COA because "[w]here an attorney has reason to believe that his client may be incompetent, effective representation may require him to inquire beyond a clean bill of mental health from a court-appointed psychiatrist." *Mullis I*, 47 F.4th at 392 (citing 831 F.2d at 1249). Whether counsel's performance was ineffective, the Court concluded, is debatable because it "requires a fact-intensive application of the all-

things-considered 'reasonably effective assistance' test." *Id.* (quoting *Strickland*, 466 U.S. at 687). Driving this conclusion was the fact that at a hearing on Mullis's competency and request to waive counsel, counsel did not object to the expert's report or otherwise contest his competence. ROA.4519-20, ROA.6916-20.

Although the COA panel stated that it granted a COA based "only on material that was presented to the state courts," it observed that Mullis's claims implicated the Supreme Court's recent holding in *Ramirez* because "Mullis's application references new evidence that could bear on [the] ultimate analysis." *Mullis I*, 47 F.4th at 392. The panel explained that in *Ramirez*, the Supreme Court "held that, where a petitioner relies on *Martinez v. Ryan* to excuse a procedural default, 'a federal court may not hold an evidentiary hearing—or otherwise consider new evidence—to assess cause and prejudice,' if the petitioner failed to develop the factual basis of [his] claim in State court proceedings.'" *Id.* (quoting *Ramirez*, 142 S. Ct. at 1739, and 28 U.S.C. § 2254(e)(2)). This led the panel to pose two additional questions:

> First, if Mullis's lawyer inadequately assisted Mullis by not objecting to the psychiatrist's report, was that failure external to Mullis? Second, can this court conclude that Mullis's lawyer rendered inadequate assistance, given the evidence it may consider in the wake of *Shinn v. Martinez Ramirez*, 142 S. Ct. 1718 (2022)?

*Id.*

### III. The Panel Denied Relief, But Only After Allowing Federal Habeas Petitioners to Offer New Evidence to Support Cause and Prejudice Without Regard to *Ramirez* or 28 U.S.C. Section 2254(e)(2).

Fast forward to the merits. The panel ultimately—and correctly—concluded that Mullis could not "demonstrate[] cause that would excuse his procedural default." Slip Op. 7. As the panel noted, Mullis's habeas attorneys were "caught between their duty to investigate Mullis's mental health, and their obligation to follow their client's desire to waive." *Id.* at 9 (citation omitted). And, considering all the evidence Mullis proffered, the panel concluded that counsel "provided reasonably effective representation, even if their efforts were sometimes imperfect." *Id.* at 12.

In reaching those conclusions, however, the panel rejected the State's argument that section 2254(e)(2) prohibits a federal habeas court from considering Mullis's new evidence because he "failed to develop the factual basis" of the "claim in [s]tate court proceedings." 28 U.S.C. § 2254(e)(2); *see Ramirez*, 142 S. Ct. at 1739. The panel reasoned that "[h]istorically, this circuit has construed 'claim'" in section 2254(e)(2) "in the narrower sense," and has "therefore declined to apply AEDPA's evidentiary bar to showings that a procedural default is excused." Slip Op. 4. The panel cited three examples of precedent in which this Court had allowed habeas petitioners to present new evidence in support of cause and prejudice under *Martinez*: *Shore v. Davis*, 845 F.3d 627, 633 (5th Cir. 2017) (per curiam), *Segundo*, 831 F.3d at 351, and *Charles v. Stephens*, 736 F.3d 380, 387 n.3 (5th Cir. 2013) (per curiam). Slip Op. 4-5 & n.2.

The panel concluded that the rule of orderliness would apply to precedent ostensibly exempting procedural evidentiary development from 2254(e)(2). *Id.* at 5-6. The panel acknowledged that, in *Ramirez*, the Supreme Court "signaled that [such] hearings fall within § 2254(e)(2)'s ambit." *Id.* at 5 n.3. In particular, the Supreme Court expressed "doubt" about the theory that "determin[ing] whether there is cause and prejudice" to excuse procedural default "is not a 'hearing *on the claim*'" subject to section 2254(e)(2). *Ramirez*, 142 S. Ct. at 1738. But the panel dismissed this discussion as dictum, observing that the Supreme Court went on to say it was not resolving whether a so-called *Martinez* hearing is "on the claim." Slip Op. 5 & n.3. The panel concluded that "*Ramirez's* suspicion of admitting evidence outside the state record to determine whether procedural default is excused" does not abrogate this Court's precedent exempting *Martinez* hearings from section 2254(e)(2)'s limitations. Slip Op. 6-7.

This petition follows.

**A R G U M E N T**

Invoking the rule of orderliness, the panel permits federal district courts to do precisely what *Ramirez* said they may *not* do: "needlessly prolong" habeas proceedings by holding a *Martinez* hearing on evidence that "never would entitle the prisoner to federal habeas relief." 142 S. Ct. at 1739 (cleaned up). This hits *both* reasons for en banc review: it creates an intra-circuit split on how to assess Supreme Court dicta, and it deepens an inter-circuit split on how to interpret the effect of *Ramirez* on the availability of an evidentiary hearing to assess cause and prejudice under *Martinez*.

## I. Review Is Needed to Align This Court's Precedent With that of the Supreme Court.

To start, "en banc consideration is necessary to . . . maintain uniformity of the Court's decisions" regarding the binding effect of Supreme Court dicta. Fed. R. App. P. 35(a)(1). The Supreme Court granted review in *Ramirez* to reject the Ninth Circuit's practice of allowing unlimited evidentiary development to assess cause under *Martinez*, which the petitioner would then use to bootstrap support for his underlying IATC claims. 142 S. Ct. at 1729-30. The Court held that if section 2254(e)(2) "applies[,] and the prisoner cannot satisfy its 'stringent requirements,' a federal court may not hold an evidentiary hearing—or otherwise consider new evidence—to assess cause and prejudice under *Martinez*," 142 S. Ct. at 1739 (quoting *Williams v. Taylor*, 529 U.S. 420, 433 (2000)). Although the Supreme Court did not reach the issue, it observed: "[t]here are good reasons to doubt" the petitioner's assertion that a hearing on cause and prejudice is not a "hearing on the claim" subject to section 2254(e)(2). *Id.* at 1738. In *Shoop*, the Supreme Court re-affirmed that "if § 2254(e)(2) applies and the prisoner cannot meet the statute's standards for admitting new merits evidence, it serves no purpose to develop such evidence just to assess cause and prejudice." 142 S. Ct. at 2046 (citing *Ramirez*, 142 S. Ct. at 1738).

Panels of this Court have split about how to deal with *Ramirez*'s treatment of *Martinez* claims. Some have concluded (properly) that *Ramirez* underscores that *Martinez* is a "narrow exception," and "the federal habeas court's review is limited to the state court record." *Nelson v. Lumpkin*, No. 17-70012, Slip Op. 9-10 (5th Cir.

June 30, 2023); *see also Cole v. Lumpkin*, No. 21-70011, 2022 WL 3710723, at *5 (5th Cir. Aug. 26, 2022) (per curiam), *pet. for certiorari docketed* (Mar. 7, 2023). By contrast, the panel here determined that because the Supreme Court's statement about what constitutes a hearing on a claim was "dicta" the Court is bound to consider evidence first introduced in federal court. Slip Op. 5 n.3.

Even taking the panel's assessment at face value, en banc review is warranted to maintain consistency on how this Court treats Supreme Court dicta generally and *Ramirez* specifically. The panel "acknowledge[d] the importance of *dicta* in Supreme Court opinions." *Id.* But that is not enough: this Court has repeatedly stated that it is "generally *bound* by Supreme Court dicta, especially when it is recent and detailed." *Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016) (emphasis added) (quotation marks omitted); *see also Campaign for S. Equal. v. Bryant*, 791 F.3d 625, 627 n.1 (5th Cir. 2015). Under that rule, the Supreme Court's analysis of section 2254(e)(2) should have bound the panel. After all, in the last 18 months, the Supreme Court has *twice* stated that (1) federal habeas petitioners cannot support their IATC claims with evidence first introduced in federal court, and (2) any evidence supporting a *Martinez* cause-and-prejudice claim must meet the same requirements as evidence supporting the underlying claim. *See supra* at 8. That is precisely the type of putative *dicta* that this Court considers binding—notwithstanding the rule of orderliness. *See, e.g.*, *Gearlds v. Entergy Sers., Inc.*, 709 F.3d 448, 450 (5th Cir. 2013) (concluding that *dicta* in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), overturned *Amschwand v. Spherion Corp.*, 505 F.3d 342 (5th Cir. 2007)); *accord Dolgencorp, Inc. v. Miss. Band of Choctaw Indians*, 746 F.3d 167, 179 n.5 (5th Cir. 2014) (Smith, J.,

dissenting) (citing *Gearlds* with favor). At minimum, en banc review is necessary to maintain uniformity in how lower courts should treat Supreme Court dicta. Fed. R. App. P. 35(b)(1)(A).

## II. En Banc Review Is Also Warranted to Align Circuit Precedent with the Correct Side of the Circuit Split Over the Impact of *Ramirez*.

En banc review is also proper because if the panel is right that this Court's precedent requires it to disregard Supreme Court precedent regarding *Martinez* hearings, that is grounds for certiorari review (and reversal) by the Supreme Court. *See* Sup. Ct. R. 10(c). Even apart from that, the proper interpretation of section 2254(e)(2) presents an important and recurring question for litigants and courts throughout the Fifth Circuit. *See* Fed. R. App. P. 35(b)(1)(B).

**A.** The question of how to properly interpret AEDPA is indisputably important. AEDPA "is to be determined by reference to a uniform federal rule." *Clay v. United States*, 537 U.S. 522, 531 (2003). In *Ramirez*, the Supreme Court created such a rule by reaffirming that petitioners should not be allowed to "needlessly prolong federal habeas proceedings" by developing evidence that Congress has forbidden them from using. 142 S. Ct. at 1739.

But according to the panel, this Court's precedent "permit[s]" federal courts to do precisely what the Supreme Court has forbidden: "consider [evidence] 'presented for the first time in federal court.'" Slip Op. 4 (quoting *Segundo*, 831 F.3d at 351). The Supreme Court has long held that new evidence cannot be the basis for federal habeas relief because "[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue

in state proceedings." *Cullen v. Pinholster*, 563 U.S. 170, 186 (2011). The Supreme Court has now unambiguously said that "a *Martinez* hearing is improper if the newly developed evidence never would entitle the prisoner to federal habeas relief." *Ramirez*, 142 S. Ct. at 1739 (quotation marks omitted). Indeed, in *Shoop* the Supreme Court called this a holding. 142 S. Ct. at 2046 ("[T]his Court has already *held* that . . . ." (emphasis added)). Yet, the panel said that this Court's case law mandates that "presentation of new evidence in federal court is not barred" in a *Martinez* hearing. Slip Op. 5 n.2 (cleaned up) (quoting *Charles v*, 736 F.3d at 387 n.3.

Even if these rules could be reconciled because whether prejudice can be established under *Martinez* is a slightly different question than the underlying IATC claim, the panel makes no effort to explain how *practically* district courts are supposed to disentangle the questions. For example, in *Washington v. Davis*, 715 F. App'x 380 (5th Cir. 2018) (per curiam), evidentiary development litigation on a *Martinez* claim lasted for years after this Court ordered the district court to allow factual development. *Id.* at 385-86. It stopped only after the Supreme Court issued *Ramirez*. The same is true in *Tong v. Lumpkin*, 825 F. App'x 181 (5th Cir. 2020) (per curiam), where years of evidentiary development litigation on a *Martinez* claim followed this Court's remand to reconsider expert funding, only to be stopped by *Ramirez*. In these cases, at the least, the panel's opinion threatens to further delay the finality that has already been unreasonably delayed. The Supreme Court issued *Ramirez* to prevent such needless delay, 142 S. Ct. at 1739, which is fundamentally at odds with the "comity, finality, and federalism" that AEDPA was meant to protect, *Davila v. Davis*, 582 U.S. 521, 537 (2017).

**B.**   The importance of the question here is further underscored because, as the panel "acknowledge[d]," there is now a "circuit split on the question" of how *Ramirez* affects the availability of a *Martinez* hearing. Slip Op. 7 n.5. In *Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713 (3d Cir. 2022), the Third Circuit held that *Ramirez* did not abrogate the circuit's rule that AEDPA does not forbid factual development to excuse procedural default. *Id.* at 723. But in *Stokes v. Stirling*, 64 F.4th 131 (4th Cir. 2023), the Fourth Circuit concluded that *Ramirez* prohibits the introduction of such evidence. *Id.* at 136.

For the reasons noted above and in the Director's briefing, the Fourth Circuit's conclusion is correct. A holding that allows factual development on procedural default where that evidence would be barred in supporting the underlying IATC claim cannot be squared with section 2254(e)(2) after *Ramirez* and *Shoop*. By contrast, the Third Circuit allows a *Martinez* hearing to consider new evidence— albeit after the court "decide[s] whether an underlying ineffectiveness claim succeeds considering only the state court record"—based on pre-*Ramirez* circuit precedent and a narrow view of which parts of *Ramirez* are binding. *Superintendent Mahanoy*, 45 F.4th Cir. At 723. This Court should join the Fourth Circuit in following the clear direction from the Supreme Court's recent decisions. At a minimum, this question is one of exceptional importance that merits the full Court's attention. *See* Fed. R. App. P. 35(b)(1)(B).

**C.**   The question is also recurring. Habeas petitioners in pursuit of discovery and evidentiary hearings have already invoked the panel's decision. *See, e.g.*, Reply in Support of Motion for Discovery at 5, *Rubio v. Lumpkin*, No. 1:18-cv-00088 (S.D.

Tex. June 23, 2023), ECF No. 92. The panel's decision "is itself a determination subject to the rule of orderliness," *Gahagan v. USCIS*, 911 F.3d 298, 302 (5th Cir. 2018), and other pending cases implicate the question too, *e.g.*, *Tabler v. Lumpkin*, No. 22-70001 (5th Cir.) (oral argument calendared for August 8, 2023). The panel's decision warrants en banc review, sooner or later. To preserve state resources, serve the interests of justice for victims and their families, and promote judicial economy, Respondent submits it should be sooner.

## Conclusion

Respondent respectfully requests that the Court rehear this matter en banc.

Respectfully submitted.

JOHN SCOTT
Provisional Attorney General

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

/s/ Lanora C. Pettit
LANORA C. PETTIT
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

NATALIE D. THOMPSON
Assistant Solicitor General

MATTHEW OTTOWAY
Assistant Attorney General

Counsel for Respondent

## CERTIFICATE OF SERVICE

On July 3, 2023, this petition was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Lanora C. Pettit
LANORA C. PETTIT

## CERTIFICATE OF COMPLIANCE

This petition complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 35(b)(2)(A) because it contains 3,859 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Lanora C. Pettit
LANORA C. PETTIT

# United States Court of Appeals for the Fifth Circuit

---

No. 21-70008

---

United States Court of Appeals
Fifth Circuit

**FILED**

June 19, 2023

Lyle W. Cayce
Clerk

TRAVIS JAMES MULLIS,

*Petitioner—Appellant,*

*versus*

BOBBY LUMPKIN, *Director,*
*Texas Department of Criminal Justice, Correctional Institutions Division,*

*Respondent—Appellee.*

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:13-CV-121

---

Before SMITH, HIGGINSON, and WILLETT, *Circuit Judges.*

JERRY E. SMITH, *Circuit Judge*:

We granted Travis Mullis a partial certificate of appealability ("COA") after the district court dismissed his federal habeas corpus petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

In his state habeas proceedings, Mullis procedurally defaulted on his claim of ineffective assistance of trial counsel. He contends that the default stemmed from ineffective assistance of state *habeas* counsel and should therefore be excused. Because Mullis has not shown that habeas counsel was inef-

fective, he has not shown cause for the default. We therefore affirm the dismissal.

I.

We recited the relevant factual and procedural history in our opinion granting Mullis a partial COA. *See Mullis v. Lumpkin*, 47 F.4th 380, 383–87 (5th Cir. 2022). In summary, Mullis was sentenced to death for capital murder. After his conviction, and all the way through his federal habeas litigation, Mullis has flip-flopped time and time again about whether to waive his right to challenge his conviction and sentence—both directly and collaterally—and his desire to pursue those challenges *pro se*.

The *volte-face* at issue was Mullis's attempt to waive state collateral review and to act *pro se* in any future decisions regarding the filing of a habeas petition. Mullis was purportedly represented in his state habeas proceedings by attorneys in the Office of Capital Writs ("OCW"), including Brad Levenson. Although Mullis's habeas attorneys objected to his decision to waive collateral review, they did not object to a report by a psychiatrist, Dr. Victor Scarano, finding that Mullis was mentally competent to make it. The state court allowed Mullis "to act *pro se* regarding any decisions concerning waiver and/or filing a post-conviction writ of habeas corpus," although the court also allowed the OCW to "continue to investigate and prosecute" a writ subject to Mullis's consent (which he was withholding at the time).

Ultimately, Mullis did not timely file a state habeas petition. After his prospects in state court ended, he filed a habeas petition in federal district court, which dismissed, finding that he had procedurally defaulted on his claims. It also denied him a COA.

We in turn granted Mullis a COA in part, limited to the following questions: (1) Did Mullis's state habeas counsel render inadequate assistance by conceding that Mullis was competent to waive review? (2) Can the court

reach that conclusion based on evidence consistent with *Shinn v. Martinez Ramirez* (*Ramirez*), 142 S. Ct. 1718 (2022)? (3) If Mullis's state habeas counsel rendered inadequate assistance, was the inadequate assistance a cause external to Mullis?

## II.

We review the district court's factual findings for clear error and its legal conclusions *de novo*. *See Sanchez v. Davis*, 936 F.3d 300, 304 (5th Cir. 2019) (citing *Dorsey v. Stephens*, 720 F.3d 309, 314 (5th Cir. 2013)). Ineffective-assistance-of-counsel claims are mixed questions of law and fact. *Strickland v. Washington*, 466 U.S. 668, 698 (1984) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 342 (1980)). Additionally, we "may affirm on any ground supported by the record." *Sanchez*, 936 F.3d at 304 (quoting *Dorsey*, 720 F.3d at 314).

## III.

Mullis contends that his procedural default is excusable because the OCW failed fully to investigate his mental health despite having concerns about it. Had it done so, claims Mullis, there was a reasonable probability that the state court would not have found Mullis competent to waive habeas review and to proceed *pro se*. Thus, habeas counsel was ineffective. Mullis also asserts that any relevant ineffectiveness is a cause "external" to him, a necessary requirement for excusing procedural default.

We disagree. But before we reach the merits of Mullis's claims, we must answer a threshold question: what evidence we may consider.

### A.

Mullis and the state disagree about what evidence we are permitted to review. Mullis maintains that he is able to expand the record beyond the one developed in state court. He wants to introduce evidence from his so-called

No. 21-70008

"*Martinez* hearing" in district court, which is a hearing set to determine whether there was ineffective assistance of state habeas counsel—an excuse for procedural default under *Martinez v. Ryan*, 566 U.S. 1, 17 (2012). The state counters that the relevant record comprises only the state trial and waiver records that satisfied the state's procedural requirements.

Given our precedent, Mullis is correct. Under AEDPA, federal district courts in habeas cases may not hold evidentiary hearings "[i]f the applicant has failed to develop the factual basis" of the "claim in [s]tate court proceedings." 28 U.S.C. § 2254(e)(2).[1] This case turns on what the term "claim" refers to. Does it refer to any claim made in the habeas context (including excuses for procedural default), or does it refer only to the underlying merits claim?

Rephrasing the question, does § 2254(e)(2) bar us from considering evidence that is outside of the state record when we are adjudicating a *Martinez* claim?

Although the parties focus on recent Supreme Court decisions, we must take a step back and consider the state of our circuit's law. Historically, this circuit has construed "claim" in the narrower sense. We have therefore declined to apply AEDPA's evidentiary bar to showings that a procedural default is excused. In *Segundo v. Davis*, 831 F.3d 345, 351 (5th Cir. 2016), for example, we held that evidentiary hearings on *Martinez* claims are permitted but not required. We therefore allowed the district court to consider an affidavit "presented for the first time in federal court" when determining whether the defendant's procedural default was excused. *Id.* at 350. In other cases, we have come to the same conclusion: Evidence outside the state

---

[1] Subject to two exceptions not relevant here. *See* 28 U.S.C. § 2254(e)(2)(A).

No. 21-70008

record may be considered when assessing a *Martinez* claim.[2]

We now turn to whether recent Supreme Court jurisprudence has abrogated that caselaw. In *Ramirez*, the Court held that *Martinez* does not permit federal courts "to dispense with § 2254(e)(2)'s narrow limits because a prisoner's state postconviction counsel negligently failed to develop the state-court record." 142 S. Ct. at 1728. But at issue in *Ramirez* was the use of evidence developed in a *Martinez* hearing to assess the defendant's underlying merits claim of ineffective assistance of *trial* counsel. *Id.* at 1729–30. *Shinn* did not reach—and indeed expressly reserved—resolution of the current situation: the use of evidence outside the state record in the *Martinez* context to establish cause and prejudice. *See id.* at 1738 (noting that while there are "good reasons to doubt" the proposition that *Martinez* hearings are not "hearing[s] on the claim" for § 2254(e)(2) purposes, there was no need for the Court to address it).[3]

One month later, the Court handed down *Shoop v. Twyford*, 142 S. Ct. 2037 (2022), which reaffirmed *Ramirez*. *Twyford* involved the transportation of the defendant to a hospital for medical testing, evidence that the defendant asserted would be helpful in obtaining habeas relief. *Id.* at 2041. He "asserted in passing that the desired evidence could 'plausibly' bear on the

---

[2] *See Charles v. Stephens*, 736 F.3d 380, 387 n.3 (5th Cir. 2013) (per curiam) ("Charles does not claim that his state habeas counsel was ineffective and, therefore, cannot rely on . . . *Trevino v. Thaler*, [569 U.S. 413] (2013), [affirming *Martinez*,] to argue that . . . [the] presentation of new evidence in federal court [is not barred]."); *Shore v. Davis*, 845 F.3d 627, 633 (5th Cir. 2017) (per curiam) ("Because Shore cannot effectively invoke *Trevino* and *Martinez*, . . . the new evidence on which Shore seeks to rely is not properly before this court.").

[3] In *dictum*, the Court has signaled that *Martinez* hearings fall within § 2254(e)(2)'s ambit. *See Ramirez*, 142 S. Ct. 1738–39. Though we acknowledge the importance of *dicta* in Supreme Court opinions, *see United States v. Becton*, 632 F.2d 1294, 1296 n.3 (5th Cir. 1980), our rule of orderliness still governs, as discussed *infra*.

question whether to excuse procedural default." *Id.* at 2046. His argument, however, was lacking in detail and failed to specify which defaulted claims he intended to bring. In holding that the district court erred in ordering the transportation because the defendant failed to show that any resulting evidence was admissible, the Court noted the following: "And in any event, this Court has already held that, if § 2254(e)(2) applies and the prisoner cannot meet the statute's standards for admitting new merits evidence, it serves no purpose to develop such evidence just to assess cause and prejudice." *Id.* (citing *Ramirez*, 142 S. Ct. at 1738).

That language reflects *Ramirez*'s suspicion of admitting evidence outside the state record to determine whether procedural default is excused.[4] It is, however, seemingly *dictum*.

More importantly, the Court's observation is directed at a different set of facts, where the defendant made no specific claims at all about how the proposed evidence would support his claim for habeas relief generally, and where the district court likewise failed to explain how the evidence would help the defendant's cause, given the application of § 2254(e)(2)'s evidentiary bar to his merits claim. *See Twyford*, 142 S. Ct. at 2045–46. In other words, the defendant's assertion that the testing would probe his *Martinez* claim appears to have been little more than a Hail Mary pass in his attempt to get the evidence admitted on his merits claim. Here, by contrast, the evidence Mullis seeks to admit undeniably pertains to his *Martinez* claim and would be used in that context alone.

Although the Supreme Court may, some day, extend AEDPA's evi-

---

[4] *See Ramirez*, 142 S. Ct. at 1738 ("While we agree that any such *Martinez* hearing would serve no purpose, that is a reason to dispense with *Martinez* hearings altogether, not to set § 2254(e)(2) aside.").

dentiary restrictions to the *Martinez* context (or, as it has suggested, dispense with *Martinez* hearings altogether), we may not violate our rule of orderliness to do so. *See United States v. Traxler*, 764 F.3d 486, 489 (5th Cir. 2014). In the absence of any on-point intervening law, whether in a statute or in a Supreme Court opinion, we must follow our narrow construction of "claim" in § 2254(e)(2). Accordingly, evidence outside the state record is admissible in *Martinez* claims for the limited purpose of establishing an excuse for procedural default, even in the wake of *Ramirez* and *Twyford*.[5]

## B.

We now address the merits of Mullis's claims and conclude that he has not demonstrated cause that would excuse his procedural default. We therefore need not reach the questions of prejudice or externality.

Procedural default "prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Gray v. Netherland*, 518 U.S. 152, 162 (1996) (collecting cases). Cause exists where "some objective factor external to the defense" impeded a petitioner's efforts to comply with the relevant state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

One such factor is ineffective assistance of habeas counsel, at least in states—such as Texas—that functionally require ineffective-assistance-of-

---

[5] We acknowledge the circuit split on the question. *Compare Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713, 723 (3d Cir. 2022) (holding that *Ramirez* did not abrogate the circuit's holding that AEDPA does not forbid factual development regarding excusing procedural default), *with Stokes v. Stirling*, 64 F.4th 131, 136 (4th Cir. 2023) (concluding that *Ramirez* prohibits the introduction of new evidence in support of *Martinez* claims). Our rule of orderliness precludes our taking sides in the split, absent en banc reconsideration.

*trial*-counsel claims to be brought in initial-review collateral proceedings. *See Martinez*, 566 U.S. at 9–12; *Trevino v. Thaler*, 569 U.S. 413, 417 (2013). In the relevant context, "the proper standard for attorney performance is that of reasonably effective assistance." *Washington*, 466 U.S. at 687 (citing *Trapnell v. United States*, 725 F.2d 149, 151–52 (2d Cir. 1983)). That standard is objective and tethered to "prevailing professional norms." *See id.* at 688.

Mullis's claims that his habeas attorneys were ineffective center on the state habeas court's determination that he was competent to waive state habeas review and habeas representation. In particular, Mullis contends that his counsel did not adequately investigate his mental health.

Mullis posits several deficiencies. The first is that although his habeas attorneys requested that Mullis be evaluated by a court-appointed mental-health expert, they failed to provide the expert with relevant mental-health records, trial transcripts, and other information that Mullis says were "critical" to the evaluation. The second is that habeas counsel failed to object to the report or challenge Mullis's waiver at the waiver hearing—the result of an "unethical promise" not to challenge Mullis's competence if an independent expert found him competent. We are persuaded by neither.

Texas law allows inmates to waive state habeas review. *Ex parte Reynoso*, 228 S.W.3d 163, 165 (Tex. Crim. App. 2007) (per curiam). It also permits them to waive habeas representation, provided that the waiver is "intelligent and voluntary."[6]

The Fifth Circuit has described the inquiry for postconviction compe-

––––––––––––––––––––––––––

[6] Tex. Code Crim. Proc. Ann. art. 11.071 § 2(a); *see also Ex Parte Gallo*, 448 S.W.3d 1, 5 n.23 (Tex. Crim. App. 2014). The competency inquiry differs from the knowing-and-voluntary inquiry. *Mullis*, 47 F.4th at 390 & n.21 (citing *Godinez v. Moran*, 509 U.S. 389, 401 n.12 (1993)). Given Mullis's arguments, however, the distinction is irrelevant here. *See id.*

tency as follows: *First*, does the individual suffer from a mental disease, disorder, or defect? *Second*, if so, does that condition prevent him from understanding his legal position and the options available to him? *Third*, if not, does that condition nevertheless prevent him from making a rational choice among his options? *Mata v. Johnson*, 210 F.3d 324, 328 (5th Cir. 2000) (citing *Rumbaugh v. Procunier*, 753 F.2d 395, 398 (5th Cir. 1985)).

Considering the totality of the circumstances, Mullis's habeas counsel provided reasonably effective assistance. Leading up to the waiver hearing, Mullis maintained that he wanted to waive habeas review and dismiss his attorneys. His habeas attorneys were therefore caught between their duty to investigate Mullis's mental health, *see Profitt v. Waldron*, 831 F.2d 1245, 1248–49 (5th Cir. 1987), and their obligation to follow their client's desire to waive, *cf. McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018).

Accordingly, Mullis's habeas attorneys agreed that if an expert found Mullis competent, they would not challenge his waiver. To that end, they requested that the court order a mental-health evaluation. The court appointed Dr. Scarano. As part of his evaluation, Scarano considered various sources, including prison medical records, court transcripts (albeit not of the trial), and a video interview of Mullis conducted by a reporter. As part of the evaluation, Scarano interviewed Mullis and performed seven forensic psychiatric tests. He also considered Mullis's descriptions of his mental-health history, including his diagnosis of bipolar disorder, his suicidality as an adolescent, his past drug abuse, and his childhood sexual abuse. Scarano then explained, in a twenty-page report, his finding that Mullis was competent to waive his right to habeas review.

It is certainly true that habeas counsel could have provided more material to Scarano. Levenson did state that he spoke with Scarano before the evaluation and told him what the trial experts had said about Mullis's mental-

health history and about Mullis's fear of being raped if put into general population. But he could have provided more medical files and notes (to which he had access) prepared by mental-health experts who testified at Mullis's trial. And although the trial had not yet been transcribed, Levenson could have tried to postpone the waiver hearing until after the transcript was produced.

More concerningly, the habeas attorneys were surprised by the fact that, despite Mullis's mental-health history and diagnoses, Scarano did not diagnose him with any Axis I (mental-health and substance-abuse disorders) or Axis II (personality disorders and mental retardation) conditions. Scarano did, however, find that Mullis had "Features of Borderline Personality Disorder," an Axis II disorder. But the attorneys did not sit idle: Levenson called Scarano to discuss the "discrepancies," whereupon Scarano informed Levenson that "his findings were based upon his current observations" of Mullis at the time.

Given the context, the habeas attorneys were reasonable in not challenging Scarano's conclusions. *Segundo*, 831 F.3d at 352. It is true that the opinion of a court-appointed psychiatrist does not always exonerate counsel of any duty to investigate further. *Profitt*, 831 F.2d at 1249. But considering all the circumstances, *see Washington*, 466 U.S. at 691, Mullis's habeas attorneys did not have a duty to investigate more than they did. Worried about Mullis's competency, they sought a mental-health evaluation. And although they did not provide Scarano with every medical or other relevant record possible, Scarano was aware—both through Levenson and Mullis himself—of the contours of Mullis's diagnoses and mental-health history.[7]

---

[7] *Cf. Roberts v. Dretke*, 381 F.3d 491, 499 (5th Cir. 2004) ("There is no doubt that [defense counsel] neither collected [the defendant's] medical records nor did he contact

No. 21-70008

In brief, the evaluation ultimately concluded that Mullis was competent. Counsel followed up with Scarano with questions about his findings. That was enough.[8]

Mullis's contrary assertions are unavailing. He points, for example, to *Profitt*, 831 F.2d at 1249, where we held that trial counsel had a duty to investigate further the defendant's mental health even though a court-appointed doctor found that he was competent to stand trial. The report, however, was provided to counsel on the very day of the competency hearing and the day before the trial, hardly allowing counsel much time to review it thoroughly. Counsel was also on constructive notice that Profitt had been adjudicated insane a mere eight months before his trial. *Id.*

Here, by contrast, Mullis's habeas counsel had the opportunity to consider Scarano's report and to follow up with him about the results. And there was no similar adjudication of incompetence. To the contrary, Mullis endured his entire trial without being found legally incompetent by the court and, by the time of his habeas waiver, had already been found competent to waive his direct appeal—with the same judge presiding throughout.

Moreover, the court-appointed expert in *Profitt* also concluded that Profitt was sane at the time of his offense. On that basis, trial counsel decided not to plead an insanity defense—the only defense that counsel had intended to present. 831 F.2d at 1247. We noted that where there is "*no advantage* in the decision to bypass the insanity defense," a decision to abandon it

---

[his] treating physicians regarding [his] suicide ideation or his subsequent treatment for related depression . . . . However, it is clear from Dr. Arambula's report that the doctor was well aware of the fact that Roberts had previously had suicidal thoughts.").

[8] Several of Mullis's mental-health conditions, including "suicidality and depression[,] are not necessarily indications of incompetence." *Austin v. Davis*, 876 F.3d 757, 785 (5th Cir. 2017).

(especially based on faulty information) was not a "tactical" decision. *Id.* at 1249.

But Mullis's case is not in a trial posture, and the failure of Mullis's counsel to challenge his competence to waive habeas review is not analogous to a strategic or tactical choice regarding trial defenses. It was merely acquiescence to Mullis's wishes in light of a court-appointed expert's finding that Mullis was competent—wishes that are permissible given that defendants need not pursue habeas relief at all. In sum, *Profitt* is easily distinguishable.

Mullis's reliance on *Bouchillon v. Collins*, 907 F.2d 589 (5th Cir. 1990), is likewise misplaced. Bouchillon pleaded guilty of robbery but later petitioned for habeas corpus, claiming that he was both insane at the time of the offense and incompetent at the time of his plea. *Id.* at 590–91. As in *Profitt*, the only available defense appeared to be insanity. And although Bouchillon's trial counsel was aware of his history in mental institutions, counsel failed to investigate his mental health at all, not even seeking a psychiatric evaluation. *Id.* at 597. "To do no investigation at all on an issue that not only implicates the accused's only defense, but also his present competency, is not a tactical decision." *Id.*

Mullis's counsel, in stark contrast, did investigate by requesting a medical evaluation. And, again, his attorneys were not mounting a defense at trial but instead were determining whether they could acquiesce to Mullis's desire to waive habeas relief and dismiss them. *Bouchillon* is distinguishable for largely the same reasons *Profitt* is. *Cf. Green v. Johnson*, 116 F.3d 1115, 1123 (5th Cir. 1997) (distinguishing both *Profitt* and *Bouchillon* for similar reasons).

In conclusion, Mullis's habeas attorneys provided reasonably effective representation, even if their efforts were sometimes imperfect. The investigation into Mullis's competence was adequate, given the available

No. 21-70008

facts. *Theriot v. Whitley*, 18 F.3d 311, 313 (5th Cir. 1994). And considering the procedural history and Scarano's findings, habeas counsel reasonably decided not to challenge Scarano's conclusion that Mullis was competent to waive his right to review.

The dismissal of Mullis's habeas petition is AFFIRMED.